**UNITED STATES of America and Alan D. Cornue, Special Agent, Petitioners-Appellees,**

v.

**Robert D. HAYES et al., Respondents-Appellants.**

**No. 16878.**

United States Court of Appeals
Seventh Circuit.

Feb. 19, 1969.

Dissenting Opinion on Denial of
Rehearing April 7, 1969.

Kerner, Circuit Judge, dissented on rehearing.

Samuel J. Betar, David P. Schippers, Chicago, Ill., Schippers, Betar and Lamendella, Chicago, Ill., of counsel, for appellants.

Mitchell Rogovin, John P. Burke, Department of Justice, Tax Division, Washington, D. C., Thomas A. Foran, U. S. Atty., Chicago, Ill., Lee A. Jackson, Joseph M. Howard, Attorneys, Department of Justice, Washington, D. C., Jack B. Schmetterer, Asst. U. S. Atty., of counsel, for appellees.

Before SWYGERT, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Proceeding to compel attendance, testimony, and production of records pursuant to summonses under the internal revenue laws.[1] Robert D. Hayes, one of the persons summoned, has appealed from an order requiring him to appear, testify, and produce records.

Messrs. Hayes, Stephenson, and Lauren are trustees of a trust operating under the name of "Americans Building Constitutionally (a trust) N.F.P.", sometimes referred to as ABC. Each was served with a summons in the matter of the tax liability of ABC, requiring him to appear, give testimony, and produce all records of the trust for the period from July 15, 1966, the date of the trust instrument, to September 30, 1967.

The summonses were served October 5, 1967, and appearance required October 16. On February 1, 1968, Special Agent Cornue, who issued the summonses, petitioned for enforcement and the district court issued an order to show cause. Hayes' answer put in issue petitioner's averments that compliance with the summons is essential to the determination of ABC's tax liabilities and set forth as affirmative defenses: (1) that ABC is a not for profit trust for educational purposes and exempt, (2) that the government and Cornue have violated the rights of Hayes, ABC, and its members under Article I, Section 1 of the constitution and the first, fourth, fifth,

1. 26 U.S.C. secs. 7402(b) and 7604(a).

sixth, eighth, ninth, tenth, and fourteenth amendments, (3) that they have "embarked on a course of action calculated to harass and embarrass" Hayes, ABC, and its members, referring to certain testimony before a subcommittee of the House of Representatives and various newspaper clippings.

The hearing took place March 15, 1968. The district court thereafter made written findings that special agent Cornue was assigned to investigate the tax liabilities of ABC; that he determined it was necessary to examine its books and records in order to determine whether it was a taxable entity and, if so, the extent of its tax liabilities; that such examination is necessary; that on August 23, 1967, Cornue requested Hayes and Stephenson to supply relevant information, but it was not supplied; that on September 12 at the suggestion of Hayes and Stephenson and their attorneys, Cornue presented written questions, but these were never answered; that on September 28, Cornue requested Hayes to provide relevant information, but was again refused; that on October 13, after service of the summonses, trustees Lauren and Stephenson adopted a resolution directing that the books and records be put in the possession of Lauren and delivered to I.R.S.; that the three trustees later appeared before Cornue but failed to testify or produce records; that on October 20 and 24, Stephenson turned over some, but only a part of the requested records; that on November 3 Stephenson and Lauren delivered the ABC records to Hayes.

The court concluded that the three trustees have a duty to comply with the summonses and entered an order accordingly. Hayes has appealed.

The testimony at the hearings appears to support the findings. Hayes, indeed, does not suggest that the findings were clearly erroneous. He does argue two other propositions, which we consider as follows:

*Striking Hayes' affirmative defenses.*

■ The trustees took Cornue's deposition and the government took Hayes' deposition on March 14, the day before the hearing.

Except for identifying himself as a trustee of ABC, Hayes responded to virtually every question as follows:

"I respectfully decline to answer on the grounds that any answer would be an invasion of the right of privacy guaranteed under the Constitution of the United States, would violate my rights guaranteed under the First, Fourth, Fifth and Tenth Amendments to the Constitution of the United States, and on the further grounds that any answer would entail a violation of my fiduciary relationship as trustee and would violate the trust agreement."

He made the same response when asked about each of his three affirmative defenses.

At the hearing before the court Hayes declined to answer questions in the same areas on the grounds that his answer might tend to incriminate him.

Before the hearing on March 15, the government filed a written motion that Hayes be ordered to answer and that upon his failure his affirmative defenses be stricken. After the refusals to testify at the hearing, the government orally asked that its motion to strike be granted. Ruling was reserved and the hearing was completed. An order striking the defenses was entered March 21.

Hayes contends that the striking of his defenses was not authorized by Rule 37(b) (2) (iii) F.R.Civ.P., under which the government's written motion in advance of the hearing was presumably made, because the court never directed him to answer, a step which is prescribed by the rule.

The defenses were not stricken, however, until after the close of the hearing. Hayes was not prevented from presenting evidence to support them. If they were

viable, he had the burden of proof [2] and utterly failed to carry it. We deem it immaterial whether the defenses were properly stricken under Rule 37 or otherwise or were simply left unproved.

We note also, but find it unnecessary to decide, that there is or may be merit to the government's additional arguments that the defenses stated were insufficient as a matter of law and that Hayes may be thought to have prevented the court from ordering him to answer by basing his refusal to answer at trial upon possible self incrimination.

### Alleged need for more extensive discovery.

Hayes' position appears to be that if he had been allowed more time before hearing, in which to take the depositions of Cornue's superiors, compel Cornue to answer questions government counsel had instructed him not to answer on his March 14 deposition, and seek production of documents by the government, he might have been able to obtain proof to support the claim of harassment in his third affirmative defense, or proof to support additional defenses, such as that the I.R.S. was improperly seeking to obtain evidence for use in a criminal prosecution or was improperly seeking to obtain information for a congressional subcommittee.

Hayes' counsel made no formal motion to compel Cornue to answer any particular question, nor for a continuance. He did tell the court at the beginning of the hearing that Cornue had declined to answer various questions, that Hayes was not ready to proceed, but needed considerable time for additional depositions and production of documents. The court decided to proceed at once.

Hayes concedes in his brief that he "is seeking this Court's aid on a matter of discretion with the trial court." And we can not find that the district court abused its discretion by proceeding in the face of counsel's informal request for more time, just referred to. Moreover, Hayes, who had, on the grounds of privacy and fiduciary duty, declined to testify in support of the defenses stated in his own answer, lacked persuasiveness in asserting a right to broader discovery than the government had afforded him. And the shell game the trustees have seemed to play with the ABC records suggests a desire to obstruct inquiry rather than a good faith defense.

We are mindful, however, that the depositions were taken only the day before the hearing and had not been transcribed, and that although by nature this type of proceeding should be expeditious, the person summoned is entitled to a meaningful adversary hearing of legitimate challenges to a summons. We have therefore examined the depositions as well as the transcript of hearing and other papers in the record to see whether they suggest the probable existence of appropriate challenges which Hayes should have been given a greater opportunity to pursue.

He supported his third affirmative defense (of harassment) by appending partial transcript of a House subcommittee hearing, dealing with foundations, held November 15, 1967. Since that hearing took place more than a month after the summonses were issued, it is clear that the hearing did not influence their issuance, and could be relevant only by reflecting events which had occurred previously. Cornue testified he understood there had been contacts with reference to ABC between a subcommittee staff member and Cornue's superiors, and testified that he had attended a meeting concerning the matter with top level I.R.S. personnel.

It seems fair to summarize that both the subcommittee and the I.R.S. had a lively concern about entities who are or claim to be tax exempt foundations, and about ABC; that the Honorable Wright Patman, chairman of the subcommittee, was highly critical of the Treasury and

---

2. United States v. Powell (1964), 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112.

I.R.S. concerning what he considered inaction or insufficient action about abuses of tax exempt status by foundations, and that the subcommittee had sought information from I.R.S. about ABC and its operations. There is nothing to indicate that the information I.R.S. is seeking by the use of summonses is not relevant to determination of ABC's tax liability.

On the other hand the facts of record strongly indicate that an inquiry into the existence and extent of ABC's tax liability is legitimate and an examination of the records sought is necessary for such determination.

Hayes has claimed that ABC is a not for profit trust, organized and operated for educational purposes, and exempt from federal taxation. The declaration of trust, however, authorizes the trustees to carry on almost any kind of business, to make distributions of the proceeds and income in their discretion, and to distribute the assets to beneficiaries upon final liquidation. Except for the initials N.F.P. in the name, there is nothing in the entire instrument prohibiting operation for profit, nor is there any provision expressly requiring or even authorizing educational activity. The trust has not applied for recognition of its exempt status.

A memorandum produced by Cornue indicates he has been informed that "ABC * * * is promoting and assisting throughout the United States the establishment of not-for-profit corporations and personal trusts for individuals for fees ranging from $1,000 to $15,000, the purpose of which is the non-payment of federal income and inheritance taxes."

At best for Hayes, the record suggests no more than that I.R.S. is making a proper inquiry into ABC's tax liability; that the subcommittee has urged I.R.S. to press the matter vigorously and make its findings known to the subcommittee; that because of the congressional interest and criticism, top level personnel of I.R.S. have been in close touch with the investigating agent and have perhaps supervised him unusually closely. Even if Hayes had proved all that, he would not have established that the investigation was being conducted or the summons issued for an improper purpose.

It was also developed that Cornue is a special agent of the intelligence division of I.R.S.; that the intelligence division investigates suspected criminal violations of income tax and other revenue laws and recommends prosecution when warranted; that the investigations of ABC and of Hayes individually are so-called joint investigations, in which a revenue agent works with and at the direction of the intelligence agent; that the objects of the joint investigation are to determine tax liability and whether there has been a criminal violation of the internal revenue code.

The fact that an investigation for the purpose of determining tax liability is deemed likely to produce evidence warranting criminal prosecution does not make the use of summons an improper use.[3]

The order appealed from is affirmed.

KERNER, Circuit Judge (concurring).

I concur in the opinion of my brethren. However, I do not think it is our function to speculate from the record as to what facts further discovery would have disclosed. In order to make Hayes' defenses meaningful, I feel that he was entitled to further discovery of Agent Cornue and the I.R.S. See United States v. Benford, 406 F.2d 1192 (7th Cir. 1969); United States v. Moriarty, 278 F.Supp. 187 (E.D.Wis.1967); and Kennedy v. Rubin, 254 F.Supp. 190 (N.D.Ill.1966). On this issue I would limit our holding to saying that the trial judge did not abuse his discretion solely on the ground that Hayes' counsel, while moving for an extension of time, never properly moved for or requested further discovery.

---

3. Wild v. United States (9th Cir. 1966), 362 F.2d 206, 209; Boren v. Tucker (9th Cir. 1956), 239 F.2d 767, 772.

KERNER, Circuit Judge (dissenting on rehearing):

Upon reexamination of the record, I am now of the opinion that the request for the production of documents was properly made. I therefore now dissent from the majority on the basis stated in my earlier concurring opinion.