**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**M. P. RUGGEIRO, as Vice President Finance & Administration of Jordanos' Inc. and Jordanos' Inc., Respondents.**

**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**John L. JORDANO, Jr., as President of Pacific Beverages Company and Pacific Beverages Company, Respondents.**

**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**John L. JORDANO, Jr., as President of Chef's Vendors, Inc. and Chef's Vendors, Inc., Respondents.**

**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**James D. JORDANO, as Vice President of Jantro Investment Company, and Jantro Investment Company, Respondents.**

**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**John L. JORDANO, Jr., as President of Jorland, Inc., and Jorland, Inc., Respondents.**

**UNITED STATES of America and Charles H. Moriyama, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**John L. JORDANO, Jr., as President of Jorlease, Inc., and Jorlease, Inc., Respondents.**

Nos. 69-42-69-47.

United States District Court
C. D. California.

May 7, 1969.

Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for petitioners.

Baird, Holley, Baird & Galen, Los Angeles, Cal., for respondents.

## MEMORANDUM OF DECISION

REAL, District Judge.

These cases come before the Court on six separate petitions to enforce Internal Revenue summonses. An order to show cause was issued by the Court requiring respondents, M. P. Ruggeiro as Vice President Finance & Administration of Jordanos' Inc. and Jordanos' Inc., John L. Jordano, Jr. as President of Pacific Beverage Company (hereinafter called Pacific), John L. Jordano, Jr. as president of Chef's Vendors, Inc. (hereinafter called Chef's), James D. Jordano, as Vice President of Jantro Investment Company and Jantro Investment Company, John L. Jordano, Jr. as President of Jorland, Inc. and Jorland, Inc. (hereinafter called Jorland), John L. Jordano, Jr., as President of Jorlease, Inc., and Jorlease, Inc. (hereinafter called Jorlease), to show cause why they should not be compelled to testify and produce records demanded

in the Internal Revenue summonses, served upon each respondent respectively.

Since each of the respondents have mutual interests and raise the same issues of law and fact, all are considered together.

Each of the summonses involved herein was issued by petitioner Charles H. Moriyama in his capacity as a Special Agent of the Internal Revenue Service, employed in the Intelligence Division of the office of the District Director in Los Angeles, California.

Separate answers have been filed by each of the respondents. In each of the answers there are admissions of the summonses and denials that they are legally enforceable.

Alleging affirmative defenses the respondents contend:

1. Petitioners' failure, after request, to acknowledge in writing that the investigation is not for criminal purposes manifests the illegality of the process in violation of the Fourth, Fifth and Sixth Amendments of the Constitution of the United States.

2. Section 7602 of the Internal Revenue Code of 1954, as amended, is violative of the Fourth, Fifth and Sixth Amendments of the Constitution of the United States.

3. Government agents were guilty of fraud and deceit by misrepresenting the scope of their investigation as not necessarily a criminal tax investigation.

4. Use of the summons is a subterfuge, the true purpose being a criminal investigation constituting an unlawful search and seizure, a denial of due process of law, and a denial of the effective assistance of counsel.

5. The summons is too broad in scope and too vague and indefinite constituting a "fishing expedition" into all of respondents' records, books, files and pieces of paper of every kind and description.

Respondent M. P. Ruggeiro as Vice President, Finance & Administration of Jordanos' Inc. and Jordanos' Inc. (hereinafter referred to as Jordanos'), further contend by way of affirmative defense:

1. The correctness of Jordanos' income tax returns for the fiscal years ending June 30, 1962, to June 30, 1965, inclusive, has been determined. The summons procedure of section 7602 of the Internal Revenue Code of 1954, as amended, does not authorize issuance of a summons in such a situation.

Respondent James D. Jordano as Vice President of Jantro Investment Company and Jantro Investment Company (hereinafter referred to as Jantro), interposes the additional affirmative defense:

1. The correctness of Jantro's income tax returns for the fiscal year ending September 30, 1965, has been determined. The summons procedure of section 7602 is therefore inapplicable.

## BACKGROUND

Samuel Charles Harris, an Internal Revenue Agent in the Audit Division, assigned to the Santa Barbara office of the Internal Revenue Service, performed an audit of the federal corporate income tax returns of Jordano for the fiscal years ending June 30, 1962, June 30, 1963, June 30, 1964, and June 30, 1965. He also performed an audit of the federal corporate income tax returns of Jantro for the fiscal year ending September 30, 1965. These audits began in December, 1965.

In connection with the audits of Jordano and Jantro, Mr. Harris examined the minute books, general ledgers, general journals, disbursements journals, sales journals, voucher register and purchase journals.

On February 6, 1967, Mr. Harris procured the execution of a Form 870,[1]

---

1. Internal Revenue Code of 1954 Section 7121 provides for closing agreements to determine final and conclusive tax lia- bility in the absence of fraud or malfeasance, or misrepresentation of a material fact. Form 870 is only a consent by

Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment.

Sometime during 1967, George Franklin Regan, a Special Agent employed in the Intelligence Division of the office of the District Director, Los Angeles, California, received information of possible unreported income of Jordano for years that had already been audited.

At the time of the receipt of this information Orrell Davis, a Revenue Agent in the Audit Division, assigned to the Santa Barbara office, was conducting an audit of Jordano for the fiscal year ending June 30, 1966.

Special Agent Regan inquired of Revenue Agents Harris and Davis concerning the scope of the audit of Jordano and discovered that these income items had not been audited.

Upon the information received, Special Agent Regan submitted an information report through channels.

On February 29, 1968, Special Agents Moriyama and Regan were assigned to a preliminary investigation of Jordano. The source of the then unnumbered preliminary case was within the Intelligence Division of the Internal Revenue Service.

On April 3, 1968, pursuant to the request of Special Agent Moriyama, there was issued by Homer O. Croasmun, Regional Commissioner, Internal Revenue Service, Treasury Department, a notice of re-examination (Form L–153) to respondent Jordano for fiscal years ending June 30, 1962 through June 30, 1965.

On June 4, 1968, Special Agent Moriyama issued and served upon Jordano a summons requiring appearance with all corporate records for the fiscal years ending June 30, 1963 through June 30, 1967.

On June 26, 1968, the tax investigation involving Jordano was changed from an unnumbered-preliminary to a numbered tax case with the continued assignment of Special Agents Moriyama and Regan.

Simultaneously, Special Agents Moriyama and Regan were assigned to unnumbered-preliminary investigation of respondents Jantro, Jorland, Jorlease, Chef's and Pacific.

On June 27, 1968, Special Agent Moriyama issued and served a summons to each of respondents, requiring appearance with all corporate records as follows:

Jorlease—fiscal years ending June 30, 1963, through June 30, 1967,
Jorland—years 1963 through 1966,
Chef's—fiscal years ending June 30, 1963, through June 30, 1967,
Pacific—fiscal years ending June 30, 1963, through June 30, 1967.

On July 15, 1968, pursuant to the request of Special Agent Moriyama, there was issued by Homer O. Croasmun, Regional Commissioner, Internal Revenue Service, Treasury Department, a notice of re-examination (Form L–153) to respondent Jantro for the taxable year 1965.

On August 2, 1968, Special Agent Moriyama issued and served a summons to respondent Jantro requiring appearance with all corporate records for fiscal years ending September 30, 1963 through September 30, 1967.

Each of the summonses issued was met with the same response by counsel for respondents—if the Internal Revenue Service would assure respondents that none of the evidence discovered, as the result of these records, would be used in a criminal prosecution of respondents or its officers, they would comply.

## THE ORDERS TO SHOW CAUSE

Respondents have raised some questions of the propriety of proceedings by orders to show cause which will essentially determine all of the issues of the petitions on file herein.

---

the taxpayer which expedites the adjustment of tax liability. It is not a closing agreement within the meaning of section 7121.

Petitioners' proceedings are brought pursuant to the provisions of Title 26 §§ 7402(b) and 7604(a).

Title 26 U.S.C. § 7402(b) provides:

"§ 7402. *Jurisdiction of district courts.*

\*     \*     \*     \*     \*     \*

(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

Title 26 U.S.C. § 7604(a) provides:

"§ 7604. *Enforcement of Summons.*

(a) Jurisdiction of district court.— If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."   .

We are not here concerned with a choice of procedure. Both sections 7402 (b) and 7604(a) provides that enforcement shall be "by appropriate process." We are, by the nature of the attack presented by respondents, required to appraise and decide whether an order to show cause would provide for all of the relief requested in the petitions.[2] The Court is of the opinion that the nature of the relief provided in both sections 7402(b) and 7604(a) requires summary disposition.

Respondents herein maintain that the case of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964),

buttressing Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), relegates summons enforcement actions to the requirements of the Federal Rules of Civil Procedure including discovery, pretrial and trial of the issues presented by the hearing. More particularly, respondents point to footnote 18 of the Powell case, *supra*.

"18. Because § 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply, Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731. The proceedings are instituted by filing a complaint, followed by answer and hearing. If the taxpayer has contumaciously refused to comply with the administrative summons and the Service fears he may flee the jurisdiction, application for the sanctions available under § 7604(b) might be made simultaneously with the filing of the complaint."

■ Unfortunately, the Supreme Court leaves more unsaid than it says in footnote 18. Certainly civil proceedings can only be instituted in this Court by the filing of a complaint. Fed.R.Civ.P. 3. The Supreme Court without providing a *procedure* then says, "followed by answer and hearing." This language falls far short of requiring a panoply of discovery and pretrial incident to the normal civil action. It would appear that the "appropriate process" required by sections 7402(b) and 7604(a) is met when the taxpayer is afforded an "adversary hearing." United States v. Powell, *supra*.

In Wild v. United States, 362 F.2d 206, 9th Cir. 1966, the Court of Appeals for the Ninth Circuit in deciding the validity of an enforcement proceeding, if not directly, did indirectly consider and approve the procedure used by the

---

**2.** Whether the government's pleading is denominated a petition or complaint is immaterial. Either is filed pursuant to

the requirement of Federal Rules of Civil Procedure Rule 2, Rule 3 and Rule 8(a).

Government here. In the Wild case, *supra,* the Court says, at page 209:

"*  *  *  Wild points out that appellees did not file a complaint, but a petition, and obtained an order to show cause."

The Court of Appeals answers:

"*  *  *  Appellants had all the procedural rights they were entitled to under the Federal Rules of Civil Procedure, including an opportunity to answer, which they did, and a hearing. No prejudice has been claimed or shown."

*Cf.* Howfield, Inc. v. United States of America, 409 F.2d 694, 9th Cir., decided March 19, 1969.

To hold otherwise would subject examination of books and witnesses in determining the liability of a person for a tax to unjustified and interminable delays, thereby nullifying the clearly expressed purpose of Title 26, U.S.C. § 7602.

## VAGUENESS AND INDEFINITENESS OF SUMMONSES

■ Each of the summonses, herein, specifies that records "relating to the financial and business transactions" of each of respondents for certain tax years under investigation are required. No clarification is necessary.

## OPPRESSIVENESS OF SUMMONSES

■ Although evidence was elicited as to the necessity of transportation of the records of respondent Jordano, by six or seven truckloads, it does not make that summons oppressive in light of the offer of the Government to go to the place where the records are stored to obtain compliance.

The testimony concerning the records is somewhat unclear. We are here concerned with six separate summonses calling for records of six corporate entities. No testimony was elicited concerning the volume of records for each entity. The volume appears to be applicable only to the records of respondent Jordano and not the other respondents. As pre-

viously stated, the offer of the Government obviates any objection of oppressiveness.

## COMPLIANCE WITH THE REQUIREMENTS OF 26 U.S.C. § 7605(b)

Title 26 U.S.C. § 7605(b) provides:

" § 7605. *Time and place of examination.*

(a) *  *  *

(b) Restrictions on examination of taxpayer.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

The application of the principles and reasoning of section 7605(b) to the present case requires consideration of two circumstances—1. Production of the records of respondent Jordano for the fiscal years ending June 30, 1963 through June 30, 1965, and 2. Production of the records of respondent Jantro for the taxable year 1965.

■ The Supreme Court in United States v. Powell, *supra,* in considering section 7605(b) lays to rest any contention of respondents Jordano and Jantro when it says 379 U.S. at page 55, 85 S. Ct. at p. 254:

"Congress recognized a need for a curb on the investigating powers of low-echelon revenue agents, and considered that it met this need simply and fully by requiring such agents to clear any repetitive examination with a superior. For us to import a probable cause standard to be enforced by the courts would substantially overshoot the goal which the legislators sought to attain. There is no intimation in the legislative history that Congress intended the courts to oversee the Commissioner's determinations to investigate."

## ENFORCEMENT OF SUMMONS ISSUED BY A SPECIAL AGENT, INTELLIGENCE DIVISION, INTERNAL REVENUE SERVICE

The enforcement proceeding herein now resolves itself to the issue of whether or not a special agent, Intelligence Division, Internal Revenue Service, can issue summonses in the performance of his duties.

Title 26 U.S.C. § 7602 provides in its pertinent part:

" § 7602. *Examination of books and witnesses.*

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(a) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account * * *. [O]r any other person the Secretary or his delegate may deem proper * * *."

Petitioners herein maintain that the Commissioner need not make any showing of probable cause to obtain enforcement of his summons relying upon United States v. Powell, *supra.* Respondents, on the other hand, relying on the Powell *case, supra,* and Reisman v. Caplin, *supra,* maintain that the summons power cannot be used for the purpose of criminal investigation or prosecution. This is not a case of probable cause but rather a determination of the legitimacy of the *purpose* of the investigation.

Petitioner Moriyama is a Special Agent assigned specific duties within the Intelligence Division of the Internal Revenue Service. The function of the Intelligence Division [3] makes the conclusion inescapable that this is not the "continuing investigation" of tax liability referred to in Boren v. Tucker, 239 F.2d 767, 9th Cir. 1956. Nor is it the situation present in the decided cases upon which petitioners rely, where criminal liability may be a possible result of the determination of tax liability. We are faced with an investigation where tax liability is to be determined only as a necessity to a prosecutable criminal case. The transparency of petitioners' assertion that their purpose in the investigation of respondents was "of ascertaining the correctness of corporate income tax returns" is apparent. For, as petitioners can claim, a civil tax investigation *may* result in criminal charges validating issuance of a summons; viewing the obverse of the same coin, a criminal investigation may—and most likely will— result in the imposition of civil tax liability including a 50% fraud penalty.

3. 30 Fed.Reg. 9399–9400 1967 CCH Standard Federal Tax Reporter, Vol. 6 § 5988 provides:

"1118.6 *Intelligence Division.* The Intelligence Division enforces the criminal statutes applicable to income, estate, gift, employment, and excise tax laws (except those relating to alcohol, tobacco, narcotics, and certain firearms), by developing information concerning alleged criminal violations thereof, evaluating allegations and indications of such violations to determine investigations to be undertaken, investigating suspected criminal violations of such laws, recommending prosecution when warranted, and measuring effectiveness of the investigation and prosecution processes. The Division assists other Intelligence offices in special inquiries, drives and compliance programs and in the normal enforcement programs, including those combating organized wagering, racketeering and other illegal activity, by providing investigative resources upon regional or National Office request. It also assists U. S. Attorneys and Regional Counsel in the processing of Intelligence cases, including the preparation for and trial of cases."

The status of an agent—revenue or special—then becomes important. Certainly not decisive of *the purpose* of an investigation—but as relevant and material evidence of *the purpose* of the investigation which would use the sensitive tool of issuance of a summons without judicial vigilance of its uses or abuses.

Revenue agents of the Internal Revenue Service are auditors charged with the responsibility of determining correct tax liability. The results of their efforts costs an errant taxpayer money. Special agents are criminal investigators charged with the responsibility of investigating criminal violations of the tax laws of the United States. The results of their efforts can cost an errant taxpayer his liberty.

The area of gray is narrow but most confusing. Revenue agents do not investigate fraud, either criminal or civil. That function is left to the special agent with his expertise in investigation. Petitioners would have the Court end its inquiry with the broad assertion that section 7602 authorizes the determination of tax liabilities by *agents* of the Treasury, whatever the purpose, and whatever the ultimate outcome. The decided cases do not agree.

In Wild v. United States, *supra,* the Court of Appeals for the Ninth Circuit in affirming a District Court Order enforcing a summons issued by a special agent sets forth the rule in this language 362 F.2d at page 208:

"In order to prevail in an enforcement proceeding of this kind, one seeking enforcement must show that the investigation will be conducted pursuant to a legitimate purpose. United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112. If the sole objective of an investigation is to obtain evidence for use in a criminal prosecution, the purpose is not legitimate and enforcement should be denied. See Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459.

"If however, the objective of the investigation is to obtain information which may be utilized in determining whether there is civil liability for a tax or a tax plus penalty, then the summons may be enforced notwithstanding the fact that the information might also be used in a criminal prosecution. See Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773; Sanford v. United States, 5 Cir., 358 F.2d 685; In re Magnus, Mabee & Raynard, Inc., 2 Cir., 311 F.2d 12, 16."

The authorities uniformly make one thing clear—the power of summons given in section 7602 cannot be used for *the purpose* of criminal prosecution. United States v. Powell, *supra,* and Reisman v. Caplin, *supra.* The evidence adduced at the hearing of the order to show cause herein, by affidavit and testimony, shows that ascertaining tax liability in the instant case was only one of the steps in the investigation being conducted by petitioner MORIYAMA to determine whether or not respondents are criminally liable for violations of the tax laws of the United States. He is performing his function as a special agent in its classic sense.

To say that a summons is not being used for an improper purpose unless the existence of a proper civil purpose is absent, United States v. De Grosa, 3rd Cir. 1969, 405 F.2d 926, simply begs the question. All criminal tax investigations to be prosecutable require the "proper civil purpose" of determination of tax liability. Simply stated no tax due—no tax fraud.

Howfield, Inc. v. United States, *supra,* compels interpretation of existing case law to be that criminal purpose refers to a criminal prosecution in esse. The Court there says:

" * * * [I]t is clear that summonses to examine taxpayer's records, obtained pursuant to 26 U.S.C. § 7602 may be used even *where their purpose is allegedly to uncover crime, when no criminal case is actually pending*

*against the taxpayer.* Boren v. Tucker, 239 F.2d 767, 9 Cir. 1956." (emphasis ours)

■ Until appellate courts speak differently, this Court is compelled to grant the petitions.

The allegations of fraud and deceit are groundless and are found not true.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and conclusions of law.