**UNITED STATES of America,**
**Plaintiff,**

v.

**Arthur CAPLAN et al., Defendants.**

**Crim. A. No. 41200.**

United States District Court
E. D. Michigan, S. D.

July 6, 1966.

Lawrence Gubow, U. S. Atty., by Paul J. Komives and William H. Merrill, Asst. U. S. Attys., for United States.

S. Allen Early, Jr., Detroit, Mich., for defendants Maxine Monford and Homer Monford.

Albert A. Goldfarb, Detroit, Mich., for all other defendants.

## OPINION AND ORDER GRANTING MOTIONS TO QUASH SEARCH WARRANTS AND TO SUPPRESS AND RETURN EVIDENCE

McCREE, District Judge.

This opinion considers motions filed on behalf of all twenty-five defendants indicted herein to quash search warrants issued by another judge of this court. Under the present practice, these motions would be addressed to him for disposition. Considerable time has elapsed since submission of this matter because the court was requested to reconsider its previous decision in United States v. Somalis and Chapps, Criminal No. 40464, which was concerned with the pivotal issue presented by these motions. The court has withheld decision in anticipation of controlling authority on the question. I have not been advised of any such authority nor have I found any in my own research. Accordingly, this overdue opinion issues at this time.

The single affidavit supporting the several warrants is concerned with sixteen different locations (a practice which presents more than ordinary difficulty to the issuing judge) and for this reason more than ordinary analysis is required in order to avoid attributing to one location allegations relevant only to another. Nevertheless, a careful reading and allocation of the many averments persuades the court that probable cause existed for the issuance of the several warrants unless the court was precluded by law from considering some of the allegations.

The motions raise other issues in addition to the contention that some of the information contained in the affidavit was illegally obtained. For the reasons set forth below, it is unnecessary to consider them.

The claim of illegality is that the information obtained by the Internal Revenue Service from the telephone company was secured in violation of 47 U.S.C. § 605, The Federal Communications Act. Defendants contend that the telephone company divulged to the I.R.S. the existence of a communication not "on demand of other lawful authority," in violation of the first clause of § 605. Defendants also contend that the use of a pen register, under the circumstances, constituted the "interception" of a communication, an act forbidden by the second clause of § 605 and prohibited from communication to others regardless of any authorization from anyone other than the sender or the receiver.

The government urges that the first clause of § 605 does not apply since the telephone calls involved were intrastate. It also urges that if the first clause is applicable to intrastate calls, the information was furnished in response of I.R.S. summons forms 2039 and 2039a, authorized by 26 U.S.C. § 7602 et seq., which satisfies the requirement "on demand of other lawful authority." The government denies that there was an "interception" of a communication since the pen register only records the fact that a number was dialed and does not

differentiate between completed and incompleted calls.

The relevant facts are briefly as follows. An I.R.S. agent told an employee of the security department of the telephone company that he desired to find out how many phones were installed at certain locations and by whom they were subscribed and to obtain whatever information could be furnished with reference to these numbers. He indicated that he suspected a gambling operation, illegal use of telephones, possible illegal installations and illegal telephone company employee involvement. Although the I.R.S. agent did not expressly request the installation of a pen register, the telephone company, stimulated by the suggestion, first conducted a "capacitance" test to ascertain whether the suspected telephones were subjected to more than normal usage. After running this test, the company then attached pen registers to the telephones in question.

The pen register is a device attached to a given telephone line usually at a central telephone office. A pulsation of the dial on the line to which the pen register is attached records on a paper tape dashes equal in number to the number dialed. The paper tape then becomes a permanent and complete record of outgoing numbers called on the particular line. With reference to incoming calls, the pen register records only a dash for each ring of the telephone but does not identify the number from which the incoming call originated. The pen register cuts off after the number is dialed on outgoing calls and after the ringing is concluded on incoming calls without determining whether the call is completed or the receiver is answered. There is neither recording nor monitoring of the conversation.

A few days after the initial conversation with the telephone company security employee, the I.R.S. agent served a summons, I.R.S. form 2039, on the telephone company and requested the company to furnish it with credit information and pen register information with reference to the telephones in question. This process was repeated with other telephones some of which were identified by pen register information furnished in response to an earlier series of summonses, forms 2039 or 2039a. In every instance, there was no pen register data in the possession of the telephone company before the suggestion to use the device on a particular phone was made and in each instance the summonses were issued only after a sufficient interval of time had elapsed to permit the accumulation of pen register data.

First, I will consider the contention that the first clause of § 605 does not apply to intrastate as well as interstate communication. Read literally and separately, the several clauses of § 605 appear to support the government's contention. However, on a careful reading of the entire section it appears that inclusion of the words "foreign and interstate" in some of the clauses and not in others is not controlling in the instant matter. Support for the contention that § 605 applies to both intrastate and interstate communication can be found by examining its parent statutes, none of which were limited to foreign or interstate communications. See 37 Stat. 302; 40 Stat. 1017; and 44 Stat. 1162.

Chief Judge Campbell of the United States District Court for the Northern District of Illinois decided this question, sub silentio, in United States v. Guglielmo, 245 F.Supp. 534 (1965) in which he found that the furnishing by the telephone company to I.R.S. agents of pen register data constituted the divulgence of the existence of communications in violation of the statute. It does not appear that the communications were solely interstate if indeed any of them were. No case has been cited to the court limiting § 605 to interstate communications and the court finds that it is applicable to intrastate as well as to interstate communications at least when the telephone system involved is capable of use for the transmission of interstate calls as we find it was in this case. In short, I find that the words "foreign and

interstate" refer to the entire communication system and not to the specific message which is transmitted through the system and which may or may not cross state lines.

The court also finds that the pen register recordation may reveal the "existence" of a communication even though the pen register does not indicate whether or not the call was completed. If the call was indeed completed, then the furnishing of the number is divulgence of the existence of a communication. It is significant in this respect to observe that the affidavit in the instant case, in more than one instance, recites that incoming calls were received by certain indicated telephone numbers from other telephone numbers also under pen register surveillance. (See affidavit, ¶ 3(g), p. 6; ¶ 4(h), p. 9.)

The government contends that even if there was the divulgence of the existence of a communication, the I.R.S. summons made such divulgence lawful. Newfield v. Ryan, 91 F.2d 700 (CA5, 1937). Without deciding whether or not the summons might be "other lawful authority" under other circumstances, I find that it is not in the instant case. The summons form 2039 is authorized by 26 U.S.C. § 7602 et seq. to be utilized to determine civil liability for taxes and not to investigate possible criminal violations. Search warrants and grand jury subpoenas are the proper devices for the discovery of violations of criminal statutes and the Congress has not vested the executive with the unrestricted subpoena power to uncover such information. United States v. O'Connor, 118 F.Supp. 248 (D.C.Mass. 1953); McDonough v. Lambert, 94 F.2d 838 (CA1, 1938).

As an alternate basis for holding that the government made forbidden use of the pen register data, I find that an "interception" took place under the circumstances here and that under Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957), no authority can permit this. To the government's argument that no "communication" was intercepted, defendants, in open court, demonstrated that it was possible to dial a number and to permit the phone to ring a specified number of times and then to hang up. When this was done, the pen register dutifully recorded the fact that the number was called. History affords us the illustration of a pre-arranged signal. Paul Revere's associate, who hung a lantern in the Old North Church, would hardly have been exculpated at a trial for treason if he argued that he was not sending a communication, but was only illuminating the belfry. It seems that if the agents entertained no misgivings about the use of the pen register constituting an "interception" here, they would have frankly requested its employment instead of having resorted to the technique of stimulating the telephone company to do so by suggestion. The government should not be permitted to instigate an investigation that is unlawful any more than it can instigate conduct that is unlawful, as the entrapment cases teach.

The court is not unmindful of the problems faced by a law enforcement agency endeavoring to investigate an operation like mutuals gambling in which the tools of the trade are ordinary innocuous articles like telephones, note pads, typewriters, adding machines and pencils. However, the Congress has indicated a policy of protecting the privacy of telephone subscribers from invasion by law enforcement officers as well as by others who may be less well motivated, and this court must follow the mandate of the Congress.

I find that it is impossible to separate the averments in the affidavit which resulted from lawful surveillance from the averments which resulted from violation of 47 U.S.C. § 605. Therefore the entire affidavit suffers from the taint of illegality. It follows that the motions should be and they are hereby granted and the evidence is suppressed and its return is ordered.