Sam (Salvatore) DiPIAZZA, Defendant-Appellant,

v.

UNITED STATES, Plaintiff-Appellee.

William Clyde DEMING, Defendant-Appellant,

v.

UNITED STATES, Plaintiff-Appellee.

Nos. 18593, 18594.

United States Court of Appeals
Sixth Circuit.

Sept. 11, 1969.

See also 6 Cir., 415 F.2d 111.

Guy Johnson, New Orleans, La., for appellant DiPiazza; Louis Di Rosa, New Orleans, La., Daniel Davies, New York City, on brief.

William J. Dammarell, and B. H. Berg, Cincinnati, Ohio, for appellant Deming; William J. Dammarell, Cincinnati, Ohio, on brief.

Edward T. Joyce, Atty., Dept. of Justice, Washington, D. C., for appellee; Fred M. Vinson, Jr., Asst. Atty. Gen., Philip R. Michael, Robert D. Gary, Attys., Dept. of Justice, Washington, D. C., on brief.

Before PHILLIPS and CELEBREZZE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

DiPiazza and Deming appeal from their convictions under 18 U.S.C. §§ 371 and 1952 on seven counts of use of interstate telephone facilities for carrying on a business enterprise of gambling in violation of state law and one count of conspiracy so to carry on that business. They were found guilty on all counts by a jury after a lengthy trial before District Judge David S. Porter.

The voluminous evidence introduced by the Government established a large scale interstate illegal bookmaking and layoff gambling operation. This operation was carried on by telephone between Cincinnati, Ohio, Fort Thomas, Kentucky, New Orleans, Louisiana, and other points. According to the evidence DiPiazza primarily was based in New Orleans and Deming in Cincinnati. The gambling enterprise between these two defendants was shown to have exceeded $400,000 in one month.

Appellants challenge the Government's obtaining certain telephone company long distance toll call records, the Government's use of the toll records, and the sufficiency of search warrants under which the bulk of the evidence against the appellants was seized. Other errors alleged will be mentioned later in this opinion.

In January 1966 special agents of the Internal Revenue Service at Cincinnati received a communication from the Internal Revenue Office at Las Vegas, Nevada, requesting that a telephone number be checked, information having been received that it was being called by Las Vegas bookmakers. The number was determined to be located in the basement apartment at 3808 Woodford Road, Silverton, Ohio, a Cincinnati suburb.

In June, 1966 a special IRS agent at Louisville informed the Cincinnati office that an undercover agent had placed bets with a certain person who had been using two telephones in Lexington, Kentucky. From the toll records of the Woodford Road telephone it was determined that calls had been placed from that number to the two Lexington numbers.

The telephone at 3808 Woodford was listed to Harry Acker, a fictitious listing. Surveillance by IRS agents disclosed Deming to be a frequenter of the Woodford premises. Examination of telephone company toll records, obtained by IRS summons, revealed that the telephone at 3808 Woodford and the telephone at Deming's residence in Fort Thomas, Kentucky, had been and were being used to make numerous toll calls to persons known to be prominent bookmakers in various cities.

Based upon the affidavits of Special Agent Guy I. Wetherell, IRS Intelligence Division, search warrants were issued. The warrant for the 3808 Woodford address was issued by a United States Commissioner for the Southern District of Ohio. The warrant for Deming's residence at Fort Thomas was issued by a United States Commissioner for the Eastern District of Kentucky.

The raid on the Woodford Road property was led by Special Agent Frank Carrington, who at the time of the trial was on a Ford Foundation grant and assigned as a legal advisor to the vice squad of the Chicago Police Department. He is a licensed attorney and a graduate of the University of Michigan Law School.

Deming was present at the Woodford address when the search warrant was executed there. A paper sack was seized containing betting records that had been torn into thousands of small pieces. More than 20,000 pieces of paper were reassembled by Carrington and agents under his control. Carrington identified these reassembled documents, testifying that they included bet slips, balance sheets and "recap" sheets, all pertaining to the bookmaking and lay-off horse betting operation between Deming and other individuals, including DiPiazza. Deming conceded that each one of these reconstructed slips was written solely in his own handwriting.

A raid on Deming's residence at Fort Thomas also produced racing forms, telephone toll records and gambling paraphernalia.

The FBI raided DiPiazza's hotel room in New Orleans on January 8, 1966, which was within the period of the conspiracy charged in the indictment. Papers taken off DiPiazza contained Deming's telephone numbers in Fort Thomas and on Woodford Road. Deming's Fort Thomas telephone had an unlisted number. It was shown in DiPiazza's papers as the equivalent of the Woodford Road telephone number. This established, in conjunction with other evidence, a connection between DiPiazza and Deming.

Toll records of the Cincinnati and Suburban Bell Telephone Company were subpoenaed and put into evidence. These are records which were maintained by the telephone company in the ordinary and normal course of its business for the Deming telephones at Woodford Road and at Fort Thomas. These records disclosed hundreds of calls, often as many as five per day, to premises occupied by Di Piazza in New Orleans, and calls to the Hilton Hotel in New York at times when DiPiazza was registered there. The search of Deming's apartment, residence and automobile produced duplicates of most of these same toll records.

We find no reversible error in the record and affirm the convictions.

### 1) The Toll Records

The principal issue on this appeal is whether the Government's evidence of the telephone calls in question was secured by the wrongful procurement of the telephone records in violation of Section 605 of the Communications Act, 47 U.S.C. § 605. This question arises first with respect to whether there was probable cause for the issuance of the search warrants. It is further contended that the evidence was unlawfully introduced and received at the appellants' trial.

### A.

Appellants contend that the toll records of long distance telephone calls constitute an "interception" of a message in violation of section 605.

The toll records obtained by IRS in its investigation are the same type of long distance records kept by the telephone company for all telephones. These records contain substantially the same information that is furnished each month to the customer as a part of his billing, i. e., the date of the call, the destination called, the telephone number to which each call is placed, the telephone number where the call originated, and the amount of the charge for the service. These records contain no information as to the persons participating in the call or the subject matter of the conversation.

A telephone subscriber or user authorizes the telephone company to intercept his calls to the extent reasonably necessary for purposes of computing his telephone charges. See Brandon v. United States, 382 F.2d 607 (10th Cir.); United States v. Gallo, 123 F.2d 229 (2d Cir.); United States v. Russo, 250 F. Supp. 55 (E.D.Pa.).

"To hold that recording by the company of the fact of a call between two of its telephones is an unauthorized interception of a communication would require a construction of the statute extending it beyond either its purpose or its words. The statute was not intended to proscribe long-standing, reasonable business practices of communication companies. When a person takes up a telephone he knows that the company will make, or may make, some kind of a record of the event, and he must be deemed to consent to whatever record the business convenience of the company requires. If by any stretch of language the making of such a record could be termed an "interception" of the communication, it is one which the sender has authorized. Hence it is not within the ban of the statute." United States v. Gallo, 123 F.2d 229, 231 (2d Cir.).

We find nothing in the language or legislative history of 47 U.S.C. § 605 indicating any congressional purpose to preclude the telephone company from making records of long distance toll calls.

Therefore we hold that the maintenance of toll records in the routine course of business does not constitute "interception" of wire communications in violation of § 605 and is not wiretapping.

### B.

Having held that the maintenance of the toll records and the making of the records does not constitute an "interception" forbidden by § 605, we now deal with the appellants' contention that the submission of the records to the IRS was a "divulgence" forbidden by § 605.

Only the first clause of 47 U.S.C. § 605 could be construed as prohibiting the telephone company from turning its records over to the Government since there was no interception of a message in violation of section 605's later clauses. The clause is as follows:

"No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or *on demand of other lawful authority*; * * *." (Emphasis supplied).

The Government maintains that the IRS summons was issued under 26 U.S.C. § 7602 and constituted "other lawful authority" for the divulgence of the toll records revealing the existence of the telephone calls. In an addendum to his findings of fact and conclusions of law on the defendants' suppression motions prior to the trial the District Judge held that the obtaining of the toll slips under the summons was obtaining them under "other lawful authority" within the meaning of section 605. Implicit in that holding is a finding that obtaining evidence for a criminal prosecution was not the sole purpose of the investigation. We find no evidence in the record to support a contention that this finding is in error. The appellants have not pointed out to this Court or to the District Court any evidence that the summonses were improper. The agent who authorized the issuance of the summons testified as a witness at the suppression hearing, but on cross-examination the appellants did not even undertake to develop any facts

to show that the summonses were issued for an unlawful purpose.

Where the investigation may produce both civil and criminal evidence, the summons under section 7602 is a proper device for obtaining records. See United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112; Ryan v. United States, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122, aff'g 320 F.2d 500 (6th Cir.). The burden is on the party objecting to the summons to show that it was used for an unlawful purpose. See United States v. Powell, *supra* at 58, 85 S.Ct. 248; United States v. Nunnally, 278 F.Supp. 843 (D.C. Tenn.). That burden is not met by merely showing that the agent issuing the summons is a special agent of the IRS. See Powell v. United States, *supra*, (summons to appear before special agent); Tillotson, Special Agent, IRS v. Boughner, 225 F.Supp. 45, motion denied, 327 F.2d 982, aff'd 333 F.2d 515 (7th Cir.), cert. denied, 379 U.S. 913, 85 S.Ct. 260, 13 L.Ed.2d 184 (Special Agent summons with unknown taxpayer); Mullins, Special Agent, IRS v. Angiulo, 227 F.Supp. 524, aff'd 338 F.2d 820 (1st Cir.), cert. denied, 380 U.S. 963, 85 S.Ct. 1108, 14 L.Ed.2d 154 (Special Agent summons). But see United States v. Kleckner, 273 F.Supp. 251 (S.D.Ohio), appeal dismissed on motion of appellants, 382 F.2d 1022.

It should be remembered that when the earlier summons was issued the IRS had no knowledge that Deming or DiPiazza were involved. The first name disclosed in the investigation was that of Harry Acker, who was listed as the subscriber of the Woodford Road telephone number with which the investigation was begun. At the time this summons was issued IRS could not have known what kind of violations would be disclosed by the investigation. There was a possibility that there would be a finding of civil tax liability.

In our view the record establishes that the telephone company divulged its records to IRS in response to a demand of lawful authority as expressly authorized by 47 U.S.C. § 605. The summonses were issued in conformity with and pursuant to the authority of 26 U.S.C. § 7602. A finding that the furnishing of the toll records for Deming's telephones at Woodford Road and at his residence at Fort Thomas constituted a violation of 47 U.S.C. § 605 cannot be supported on this record.

In our opinion the decision in United States v. Caplan, 255 F.Supp. 805 (E.D. Mich.), relied upon by appellants, is distinguishable from the present case in at least two particulars: (1) that case involved the use of an unauthorized pen register, which, unlike making long distance toll records, is not an activity of the telephone company consented to by the subscriber and (2) the District Judge in that case found as a fact that the IRS summons was issued to investigate possible criminal violations and not to determine civil liability. In the present cases District Judge Porter, in the addendum to his findings of facts and conclusions of law on the motion to suppress, affirmatively found that the obtaining of the long distance toll slips in response to IRS summons was pursuant to "demand of lawful authority" as that phrase is used in 47 U.S.C. § 605.

### C.

The appellants contend that the toll records could only be obtained under a search warrant, citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and Hanna v. United States, 393 F.2d 700 (5th Cir.). We find this contention without merit. *Katz* was an electronic surveillance case in which the Government eavesdropped on telephone conversations. The Court said, "One who occupies [a telephone booth] * * *, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." 389 U.S. at 352, 88 S.Ct. at 511. He is not entitled to assume that the fact that he is making a call will be a secret. Similarly one who uses a telephone to make long distance calls is not entitled to assume that the telephone company will require a warrant

before submitting its records in response to an IRS summons.

The Supreme Court recently held that Katz v. United States is "to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967." Desist v. United States, 394 U.S. 244, 254, 89 S.Ct. 1030, 1036, 22 L. Ed.2d 248. Any eavesdropping in the present cases occurred well before that date.

Hanna v. United States, *supra,* was a case of wiretapping by the telephone company and, although the appellants did not mention it in their briefs, was written in three opinions including a dissent. The same panel reversed itself in a unanimous opinion at 404 F.2d 405.

We find no Fourth Amendment right of the appellants violated in the summoning of the toll records.

We hold that the toll records were properly obtained by the Government and were usable both as a basis for the search warrants and as evidence at trial against the appellants.

2) Sufficiency of the search warrants

▪ Appellant Deming challenges the search warrants on the grounds that they are invalid under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; that they are supported by differing statements; and that there is a discrepancy between a date alleged in the statements and what was subsequently proved by the evidence. We find that the warrants were issued on a showing of probable cause and were in no way defective. The statement which is challenged recites the qualifications of the Special Agent making the statement and then recites the following facts on which probable cause was found by the District Court: The Cincinnati office of the IRS was informed in February 1966 (the date is discussed below) that suspected bookmakers in Las Vegas, Nevada were calling a Cincinnati telephone number. The Cincinnati IRS determined the name of the subscriber to the number and examined the toll records discussed above. In June 1966 the affiant was informed by another named Special Agent that a third named Special Agent had been making bets with a person in Lexington, Kentucky by calling two numbers there. Calls had been placed from the Lexington numbers to the Cincinnati number. Calls had also been placed between the Cincinnati number and that of Sam DiPiazza, who was a nationally known bookmaker, and that of an address in Louisville, Kentucky, for which a federal wagering stamp had been issued. The affiant concluded that these telephone calls, in his judgment as an experienced investigator, showed a pattern of a bookmaking operation at the Cincinnati number on Woodford Road.

The statement further recited that the Woodford Road building had been put under surveillance and that a certain automobile, registered to Deming's mother at Deming's address in Fort Thomas, Kentucky, had been observed on eight occasions outside the building and Deming had been observed driving it. Deming was known to the affiant as a bookmaker and had been arrested for wagering law violations and had at one time had a wagering stamp. The toll records revealed a number of calls from Deming's home number to the two Lexington numbers at which the Special Agent had placed wagers.

Deming urges that this Court hold that there was not probable cause because the statement did not recite the name of the informer who told the IRS in Cincinnati in early 1966 that gamblers were calling the Cincinnati number.

In both Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, the informant's information was central to the finding of probable cause. In the present case the information from the unknown informant could have been left out of the statement altogether without affecting the determination of probable cause. The information from the informant here

was merely the tip which first aroused the curiosity of the IRS. The investigation did not really begin until the Cincinnati number was tied in with the telephone numbers in Lexington used by the person with whom the Special Agent was placing wagers.

*Spinelli* is no authority for the proposition that the search warrant is invalid because an investigation is begun as a result of a tip. Weak, anonymous and even untrustworthy information may serve as the opening clue to uncovering criminal acts. The District Judge was correct when he stated in the course of the proceedings on the motion to suppress, that: "They can get a lead in any way [so long as it is not illegal]; and if it is followed by investigation which turns up all kinds of probable cause for such as there was in this affidavit * * it will support a judicial finding of probable cause."

In the case of United States v. Nicholson, 303 F.2d 330 (6th Cir.), cert. denied 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63, where this Court was faced with affidavits alleging facts similar to those in this case, we held:

"Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, supra, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Whether probable cause exists requires an act of judgment formed in the light of the particular situation and with account taken of all the circumstances. Because many situations are more or less ambiguous, a determination that probable cause exists should be accepted by this Court unless it is shown that the Commissioner's judgment was arbitrarily exercised. Brinegar v. United States, supra, 338 U.S. 176, 69 S.Ct. 1302; Merritt v. United States, 249

F.2d 19, 20, C.A.6th." 303 F.2d at 332.

We hold that probable cause under this standard was established by the factual allegations of the statements in the affidavits.

Appellant Deming complains that the statements in support of the five search warrants were not identical, that the District Court upheld the warrants on the basis of the affidavit which contained additional allegations, and that without the additional allegations there is no showing of probable cause.

The affidavits are identical except that some additional allegations appear in some of them. In our discussion above we have dealt with the most limited of the affidavits. The additional statements enhance the showing of probable cause but are not necessary to establish it.

In United States v. Nolan, 413 F.2d 850 (6th Cir.), this Court said:

"We believe that consistent with the Fourth Amendment the facts supplied the Commissioner by both affidavits could be taken into account by him in determining probable cause in relation to each."

The District Court was well aware of the differences in the affidavits and did not make its decision on the basis of the fullest alone. We concur with the conclusion of the District Court that probable cause was shown in all of the affidavits.

Appellant places emphasis upon a small variation in dates between the affidavits and proof. The affidavits state that the information first was received from Las Vegas in February 1966. The evidence indicates that the Las Vegas IRS office requested in January 1966 that the telephone at 3808 Woodford Road be checked. The District Judge made no specific finding as to the date the information first was received by the Cincinnati Office from Las Vegas. In his findings of fact on the motion to suppress, he said:

"An IRS intelligence agent in Las Vegas had a suspected bookmaker

under eyeball surveillance, observing him to make a number of calls from a certain phone, obtained the records regarding such calls from the telephone company, discovered one to be Cincinnati 791–4793, listed under the name of Harry Acker, 3808 Woodford Road, Silverton, Ohio.

"Investigation followed, and the case was put on the shelf until June, 1966, when it was reopened when an IRS agent from Louisville, Kentucky, advised the Cincinnati Office that the same number was being called by Lexington telephone numbers under surveillance.

"Investigation and eyeball surveillance followed * * *."

We find no possible prejudice to appellants growing out of the conflict in dates as between January and February 1966. This variation could not be construed to constitute reversible error.

We hold that the warrants were based on probable cause and that the material seized under them was admissible in evidence.

### 3) Electronic surveillance

■ Appellant DiPiazza frames the question with respect to electronic surveillance as:

"Did The Judge Deny To The Accused An Open Court Determination Of The Nature And Admissibility Of 'Findings' And 'Conclusions' Resulting From Some Ninety Hours Of Illegal Electronic Eavesdropping?"

We hold that DiPiazza had the opportunity to show infirmities in the Government's case resulting from electronic surveillance and that none was revealed.

A thorough pre-trial evidentiary hearing was conducted by the District Judge on defendants' motion to suppress. There was no evidence of any electronic surveillance of Deming or his telephones at the 3808 Woodford Road address or his residence at Fort Thomas. The United States filed notice, prior to the hearing, that DiPiazza had been subjected to electronic surveillance in the past and pro-

duced 35 tapes for inspection of counsel for defendants. Defendants introduced five tapes into the record. The District Court made a finding of fact that there was no connection between the earlier electronic surveillance of DiPiazza and the investigation which led up to the indictment in the present case.

After the trial a hearing was held on the problem of electronic surveillance on the appellants' petition and motion to suppress. No evidence was taken and none was offered. Counsel argued evidence which was already before the Court and declined to bring on either new witnesses or otherwise to show taint in the Government's case from illegal surveillance. The District Judge reaffirmed his previous ruling.

Thus the defendants were afforded an opportunity both before and after trial to show any taint of the Government's case, including the search warrants, by electronic surveillance. The Government demonstrated the basis of its case to be independent of electronic surveillance. The appellants failed to demonstrate taint. See Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed. 2d 176; Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307.

We hold that the District Court did not deny the appellants any opportunity for a hearing to which they were entitled with respect to the question of surveillance of an illegal nature.

### 4) Marchetti and Grosso

■ Deming urges that Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed. 2d 906, require the exclusion of the evidence against him which was seized under the search warrants, because he was charged initially in an information with violation of the wagering tax laws by willful failure to pay the tax imposed by 26 U.S.C. § 4411. Subsequent to the return of the indictment on which Deming and DiPiazza were tried, the information was abandoned.

*Marchetti* and *Grosso,* decided after Deming's trial, do not hold that the wagering tax laws are unconstitutional. United States v. One 1965 Buick, 392 F. 2d 672 (6th Cir.), petition for cert. filed, 37 U.S.L.W. 3221 (No. 619). They hold that if a criminal defendant charged with violating the wagering laws properly asserts his privilege against self-incrimination the Fifth Amendment is a bar to the criminal prosecution. Thus, Deming could have pled the Fifth Amendment in bar of prosecution for the wagering tax violation. It does not follow that the evidence seized under the warrants must be excluded since the warrants were proper authority for the searches at the time they were issued and executed. Washington v. United States, 402 F.2d 3 (4th Cir.), petition for cert. filed, 37 U.S.L.W. 3287 (No. 831). Since the evidence was obtained under valid search warrants, there was no basis for excluding it. This conclusion also disposes of Deming's claim that he was improperly denied a hearing on a suppression motion prior to the indictment—he cannot have been prejudiced by not having a hearing at which he could not have prevailed in his motion.

We intimate no opinion on whether warrants issued after *Marchetti* and *Grosso* for wagering tax violations are valid. We hold only that *Marchetti* and *Grosso* do not require the exclusion of evidence seized prior to the decisions in those cases under otherwise valid search warrants when the evidence is introduced to show the commission of crimes other than wagering tax violations.

### 5) Conclusion

Other contentions made by the appellants have been considered, and we are of the opinion that they are without merit. The District Court made no error in overruling the various motions to suppress.

Affirmed.

CELEBREZZE, Circuit Judge (dissenting).

I respectfully dissent. I agree with the majority that telephone company toll records containing an individual's long distance calls are protected by § 605 of the Communications Act. The principal issue before us is whether the Government violated that section by using the § 7602 summons to obtain the telephone records that led ultimately to Appellants' convictions. If the Government did violate § 605 there was no probable cause for the search warrants. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Without the toll records, the Government could not establish that a bookmaking network existed between Deming's telephones, DiPiazza's New Orleans telephone, and the two telephones in Lexington, Kentucky.[1] Stripped of this information, the only evidence the Government had when it went before the Commissioners was an unsupported tip from Las Vegas, Nevada, and visual surveillance which disclosed nothing more than the fact that Deming was seen near the Woodford Road apartment. The U. S. Supreme Court held in *Spinelli* that such circumstances did not establish probable cause.

1. I.R.S. agents also summoned toll records for telephone numbers found in Deming's telephone records, including those for two telephone numbers used by Kuhn. Kuhn was indicted along with Appellants as a co-conspirator and convicted largely on the basis of the evidence seized in the raids on Deming's premises. This Court today affirmed his conviction, No. 19,030. Kuhn's telephone numbers were the Lexington, Kentucky telephone numbers named in the affidavits supporting the search warrants. The toll records for his numbers showed a high volume of calls to Deming's telephone numbers. Appendix, pp. 155 and 157. The toll records, which were summoned well before June of 1966, established the bookmaking network alleged in the affidavits. Assuming that an I.R.S. agent did place bets with parties at the Lexington, Kentucky telephone numbers in June of 1966 as alleged in the affidavits, it was not because of his own independent investigation but because of the information contained in the toll records.

I cannot agree with the majority's conclusion that the Internal Revenue summons that were used to obtain the toll slips were "other lawful authority" within the purview of § 605. I am of the opinion that the record clearly establishes that Government agents used the summons for the sole purpose of procuring evidence to prosecute and convict Appellants of conspiracy to violate, and of violating federal criminal statutes. This is contrary to the U. S. Supreme Court's holding in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), where the Court said that the Government could not use the § 7602 summons for that purpose.

When the Government conducts searches for evidence of crime it must proceed by lawful authority. No less is required under § 605 which embodies a congressional mandate that the privacy of telephone users shall be free from arbitrary invasion by government officials. Consequently, the U. S. Supreme Court has held that when such an invasion does take place evidence seized as a result may not be used in a criminal prosecution against the parties to the communication, in these cases, Deming and DiPiazza.[2] These holdings accord with the rule excluding evidence seized in violation of the Fourth Amendment, to which § 605 has often been equated.[3]

The record in these cases establishes that Government agents obtained the evidence which led to Appellants' indictments and convictions through an indiscriminate abuse of civil process, the § 7602 summons.

The majority opinion states that "[t]he FBI raided DiPiazza's hotel room in New Orleans on January 8, 1966, which was within the period of the conspiracy charged in the indictment." It is important to note that the F.B.I. raided DiPiazza's hotel room one month before the Government received its alleged Las Vegas information concerning Deming's Woodford Road telephone number. It is also important to note that the Government admitted during the hearing on the motion to suppress that electronic surveillance had been conducted against DiPiazza by both the F.B.I., which arrested DiPiazza, and the I.R.S., which arrested Deming, his co-conspirator.

Upon the arrest of DiPiazza on January 8, 1966, the F.B.I. obtained from his person papers containing Deming's Woodford Road telephone number. Although the I.R.S. informed the Commissioners that it summoned Deming's telephone toll records (Woodford Road) in February of 1966, supposedly at the request of its Las Vegas office, evidence developed that these toll records were summoned in January of 1966. The chronology of events in these cases emerges as follows: The F.B.I. and the I.R.S. electronically monitored DiPiazza's conversations; F.B.I. agents raided DiPiazza's hotel room in January of 1966 and seized Deming's Cincinnati, Ohio telephone number; I.R.S. agents summoned the toll records for that number in the same month, procured search warrants on the basis of the information contained in them, and seized the evidence that led to Appellants' convictions for violating wagering statutes and for conspiring to do so.

In overruling Appellants' motions to suppress, the District Judge found that the joint F.B.I.–I.R.S. electronic surveillance did not lead to the indictments against them. He found that the Las Vegas information did. Although some argument during the hearing on the mo-

---

2. And Kuhn in No. 19,030, Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); on second appeal, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942). The term "sender" has been held to include both parties to the telephone conversation. United States v. Tane, 329 F.2d 848 (2d Cir. 1964);

see Rathburn v. United States, 355 U.S. 107, 113, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957) (Dissenting opinion of Frankfurter, J.).

3. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942); see generally Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1947).

tion to suppress was devoted to the use of the § 7602 summons in obtaining the toll records, the Government did not at any time allege that the investigation conducted by its agents had civil tax ramifications.

Coming to the propriety of the Government's use of the § 7602 summons, even if we assume that the joint electronic surveillance did not lead the Government to the evidence used to convict Appellants, which is, I believe, a highly questionable assumption, it is abundantly clear that the F.B.I. and the I.R.S. were not interested in Appellants' civil federal income tax liability. Special I.R.S. agent Wetherill, who obtained the search warrants, revealed as much during the hearing on the motion to suppress. In the colloquy that follows, Appellants' counsel was attempting to ascertain from Wetherill how he knew that DiPiazza was a "nationally known bookmaker" as he had alleged in the affidavits supporting the search warrants:

"Q. Now, again I ask you what makes a suspected bookmaker?

A. Suspected bookmaker is a person that I believe to be engaged as a bookmaker.

Q. But who does not have a stamp, does not pay an excise tax and who has not been convicted; is that correct?

A. Yes, sir.

Q. Now, explain to me why you refer to Sam DiPiazza, who has not been arrested, not been convicted and who has never had a stamp as a nationally known bookmaker? Look at your affidavit and tell me why you made such a statement.

Mr. Michael: I object to one part of the question if it said he has never been arrested. We have information to the contrary.

Mr. Johnson: May I rephrase the question, I didn't mean to say arrested.

The Court: Forget the arrested.

Q. Do you know whether or not he has ever had a stamp?

A. No, sir.

Q. Have you ever checked it?

A. No, sir.

Q. Do you know whether or not he has ever paid excise tax?

A. No, sir.

Q. Have you ever checked it?

A. No, sir.

Q. Have you ever checked whether he has ever been convicted?

A. No sir.

Q. However, you swear he is a nationally known bookmaker?

A. For the years I have been in the Service, for these years I have been in the Service I have heard and been told that Sam DiPiazza is a bookmaker."[4]

But there is more than the subjective intent of the agents in these cases to show that this was from start to finish a criminal investigation. The I.R.S. Special Agent, like Wetherill and all of the agents who participated in these cases, does not assess civil tax liability. He, like his agent colleague in the F.B.I., has a far more grave responsibility:

"A special agent is a criminal law enforcement officer, and just like any state or municipal detective or policeman." N.Y.U. 20th Inst. on Fed. Tax 1081, 1087 (1962).

Congress has authorized the Commissioner of Internal Revenue to investigate both civil and criminal offenses against the revenue. The first of these functions is carried out by the revenue agent who is usually assigned to the Service's Audit Division. His job is to see that taxpayers accurately report their income and pay

4. As the U. S. Supreme Court said in Spinelli v. United States, 393 U.S. 410, 418–419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), "a simple assertion of police suspicion" that someone "was known * * * as a gambler" may not provide a basis for a finding of probable cause for a search warrant nor "be used to give additional weight to allegations that would otherwise be insufficient". See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

the tax owing on it. The special agent, on the other hand, is assigned to the Service's Intelligence Division. His function, as stated above, is to investigate criminal offenses against the revenue. Wild v. United States, 362 F.2d 206 (4th Cir. 1966). When a taxpayer may be subject to increased liability for taxes as well as criminal penalties, the revenue agent and the special agent will work together in a joint investigation. Thus, for example, where a revenue agent suspects fraud on the part of a taxpayer that would deprive the Government of tax dollars and possibly subject the taxpayer to criminal penalties, he will call in the special agent:

"When a Special agent enters the picture, it is an entirely new investigation, for a new purpose, and the civil tax liability is no longer involved." N.Y.U. 20th Inst. on Fed. Tax 1081, 1087 (1962).

As mentioned above, no Revenue agent ever took part in the Government's investigation. The summoning of the telephone records, the stakeout of the Woodford Road apartment, and the seizure of all the evidence against Appellants was handled by special agents of the Internal Revenue Service whose function it is to "investigate criminal offenses against the revenue." This takes on crucial significance in light of the Supreme Court's holding that a summons authorized under 26 U.S.C. § 7602 cannot be used where the I.R.S. has for its purpose the obtaining of evidence for use in a criminal prosecution. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); see Boren v. Tucker, 239 F.2d 767 (2d Cir. 1956); United States v. DeGrosa, 405 F.2d 926 (3d Cir. 1969); United States v. Caplin, 255 F.Supp. 805 (E.D. Mich.1966).

I believe that the majority paints with too broad a brush when it says that the courts will grant enforcement to the § 7602 summons "[w]here the investigation may produce both civil and criminal evidence." The cases that the majority cite in support of that statement, namely, United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and Ryan v. United States, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122 (1964), say that the Commissioner must show that the investigation is "pursuant and relevant to" a legitimate purpose, which is, in the language of § 7602:

"[To] ascertain[ing] the correctness of any return * * * where none has been made, determin[e] the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability * * *."

I submit that none of these purposes were present here. See Boren v. Tucker, 239 F.2d 767 (9th Cir. 1956).

While courts have granted enforcement to the § 7602 summons where the investigation might lead to a criminal prosecution the thrust, purpose and scope of the investigation at the outset was to determine the liability of the taxpayer for taxes owed to the Government. United States v. Kleckner, 273 F.Supp. 251 (S.D. Ohio, 1967), appeal dismissed, 382 F.2d 1022 (6th Cir. 1967).

It is a far different thing to say as the majority does in defense of the summons issued in these cases that there was "a possibility that there would be a finding of civil tax liability." We have a deep and fundamental tradition in this country given force through our Constitution that prevents Government agents from rummaging at will into the private lives of citizens with the expectation that something useful may turn up. Accordingly, I cannot condone the sweeping use of the § 7602 summons in these cases which enabled the I.R.S. to seize knowledge of Appellants' telephone conversations. I do not believe that the executive branch of our government is entitled to wield such power, nor can I excuse its exercise here on the ground that Government agents believed that the rewards flowing from their actions would more than justify their unfettered intrusion into Appellants' private lives.

While I am in accord with the ultimate goal of law enforcement agencies in stamping out organized crime in this country, these agencies must nevertheless proceed in a manner consistent with existing court decisions, congressional mandate, and constitutional limitations. It is my opinion that they have failed to do this.

Since it is my belief that the sole purpose of the investigation in these cases was to gather evidence for use against Appellants in a criminal prosecution, I submit that the § 7602 summons were not "other lawful authority" within the meaning of § 605 of the Communications Act. Accordingly, the information found in the toll slips could not be disclosed to the Commissioners. 47 U.S.C. § 605; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Without this information, the Government could not meet the standards for probable cause established in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

I would therefore reverse.