### UNITED STATES v. O'CONNOR.
### No. 53–64–W.

United States District Court
D. Massachusetts.
Oct. 21, 1953.

Anthony Julian, U. S. Atty., W. Langdon Powers, Asst. U. S. Atty., Boston, for plaintiff.

W. Arthur Garrity, Jr., Maguire & Roach & Garrity, Boston, Mass., J. J. Maloney, Jr., Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a petition under § 3633 to enforce a summons purportedly issued under § 3614 of the Internal Revenue Code, 26 U.S.C.A. §§ 3614 and 3633. The first of these sections reads as follows:

(a) "To Determine liability of the taxpayer. The Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

John J. Cavanagh, Special Agent of the Internal Revenue Bureau, served upon John J. M. O'Connor a subpoena duces tecum directing the production of papers bearing upon the 1946 to 1950 income tax returns of Frank Iaconi. Since O'Connor refused to obey the subpoena, Cavanagh petitions this court to enforce it. On the filing of the petition an order to show cause was made returnable October 19, 1953.

The facts were agreed upon by counsel for the Special Agent, counsel for O'Connor, and counsel for Iaconi. Indeed Iaconi sought to intervene in the proceedings, but this Court denied him the right to do so, and limited him to having his views presented by counsel as amicus curiae.

Upon the agreed facts it appears that Iaconi engaged O'Connor as an accountant. In that capacity O'Connor used work sheets and other papers in preparing Iaconi's tax returns. Months ago, under specific directions from higher authority in the Bureau, Cavanagh conducted an investigation into Iaconi's tax returns. Thereafter he made a report upon such matters to his superior authorities. Cavanagh has not now pending before him any specific inquiry into Iaconi's affairs, and has not any outstanding directions with respect to Iaconi from superior authorities in the Internal Revenue Bureau or elsewhere in the Treasury Department. Nonetheless, under his general authority as Special Agent, Cavanagh is always authorized to issue subpoenas relative to tax matters in the case of anybody who seems to him deserving of his investigation, even though no superior authority

has directed particular attention to the individual concerned.

In the meantime, on February 13, 1953 Iaconi was indicted by the Grand Jury. The indictment has been returned to Judge McCarthy for trial. On October 5, 1953 that jurist ordered the Government to file a bill of particulars stating the sources of the 1946 to 1950 income of Iaconi. The Department of Justice is endeavoring to comply. Representatives of that Department, without directing representatives of the Treasury to do anything, conferred with Cavanagh and other Treasury officers. Thereafter, Cavanagh issued the subpoena now in question. Cavanagh admits that in issuing the subpoena *at least one* of his purposes was to aid the Department of Justice in the prosecution of the criminal case against Iaconi.

Upon the foregoing agreed facts O'Connor does not suggest (nor indeed could he hope to succeed in persuading this Court) that he or Iaconi is entitled to any special privilege against testimonial disclosure on the ground that O'Connor was an accountant, and Iaconi was his client.

The only issue which is raised by O'Connor is that the power which Cavanagh has purported to exercise to compel the production of documents is a power granted under § 3614 of the Internal Revenue Code for the purpose of aiding an investigation (presumably primarily civil in character, though perhaps not necessarily so), coming within the direct scope of the interest of the Treasury, and the specific duties of Agent Cavanagh.

The argument of the opponent of the subpoena, in short, comes down to the proposition that this Court ought not to lend its aid in *enforcing compliance* with a subpoena administratively issued by a Treasury official to aid the United States Attorney, or Department of Justice official.

To this argument, the Government, in petitioning for enforcement of the subpoena, answers that although the facts before this Court show that *one* of the purposes of Cavanagh was to aid the prosecution against Iaconi, so far as this Court knows there may be many other purposes more obviously appropriate to the direct interest of the Treasury and the direct concern of Agent Cavanagh.

The problem presented by these competing arguments is hardly novel. In similar cases the limited purpose of a Treasury subpoena was recognized, Pacific Mills v. Kenefick, 1 Cir., 99 F.2d 188, 189. Cf. Rasquin v. Muccini, 2 Cir., 72 F.2d 688; Bolich v. Rubel, 2 Cir., 67 F.2d 894.

■ If the question is to be looked at not in terms of precedent, but on the basis of the reason of the matter, the respondent again has the better of the matter. With commendable candor, the petitioner has admitted that one of his purposes is to further a criminal prosecution for which he has no official responsibility. He has also admitted that he has not pending before him any specific matter involving Iaconi. And he has also truthfully disclosed that he has completed the report covering Iaconi's case for which he was asked by his superior officer. On this showing, it seems to this Court to be against public policy for the judicial branch of the government to lend its support to the enforcement of the administrative subpoena.

■■ So far as this Court knows, Congress has never in criminal matters vested the executive with an unrestricted subpoena power to uncover information which might aid in the enforcement of criminal statutes and the preparation of criminal cases, Cf. In re National Window Glass Workers, D.C.N.D.Ohio, 287 F. 219. Rule 17(c) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., has only the limited function of procuring production of papers for use in evidence at a trial. It is not the equivalent of pre-trial discovery. Cf. Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879.

The Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our peo-

ple speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure. That is the inquisitorial body provided by our fundamental law to subpoena documents required in advance of a criminal trial, and in the preparation of an indictment or its particularization. See Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power. The power under § 3614 was granted for one purpose, and is now sought to be used in a direction entirely uncontemplated by the lawgivers. The limitations implicit in every grant of power are that it will be used not colorably, but conscientiously for the realization of those specific ends contemplated by the donors of the power.

Application for the issuance of a judicial subpoena to implement an administrative subpoena is denied.