**In the Matter of MAGNUS, MABEE & REYNARD, INC., Appellant.**

**In the Matter of HURDMAN & CRANSTOUN, Percy C. Magnus, Appellant.**

No. 172, Docket 27813.

United States Court of Appeals
Second Circuit.

Argued Oct. 25, 1962.

Decided Dec. 6, 1962.

Corcoran, Kostelanetz, Gladstone & Lowell, New York City (Boris Kostelanetz, Jules Ritholz, Jon H. Hammer, New York City, of counsel), for appellants.

Morton L. Ginsberg, Asst. U. S. Atty., for Southern Dist. of New York, New York City (Vincent L. Broderick, U. S. Atty. for Southern Dist. of New York, and David R. Hyde, Asst. U. S. Atty., on the brief) for appellee.

Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

This is an appeal from an order denying the quashing of Internal Revenue Service summonses issued on June 19, 1961, under Section 7602 of the 1954 Internal Revenue Code, directed to Magnus, Mabee & Reynard, Inc. (the corporation) and to Hurdman & Cranstoun (the accountants), requiring them to produce certain records relating to Percy C. Magnus and Margaret A. Magnus (the taxpayers) whose tax liabilities are under investigation. This is the second time these summonses have been before this court on a motion to quash. The

first attack on the summonses was made by the taxpayers who moved to quash the summonses on June 29, 1961. Their application was denied by Judge Dimock on July 14, 1961, and reargument was denied (D.C., 196 F.Supp. 127). The taxpayers appealed. The decision below was affirmed in an opinion by this Court on February 13, 1962. (2 Cir., 299 F.2d 335). Petitions for rehearing and rehearing *in banc* were denied. A stay was granted on April 4, 1962, by Mr. Justice Harlan pending application for a writ of certiorari. On April 10, 1962, ten months after the summonses were originally issued, an indictment was filed charging Percy Magnus with tax evasion and failure to file returns. Thereafter, certiorari was denied by the Supreme Court on June 11, 1962 (370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499). The corporation then sought on July 17, 1962, to stay enforcement and quash the summons directed to it, and the taxpayer Percy C. Magnus sought similar relief against the summons directed to the accountants. Both applications were denied in an opinion by Judge Dimock on September 19, 1962, and it is this ruling that is the subject of this appeal.

The appellant corporation is not the taxpayer. The records specified in the summons are the corporation's, not the taxpayer's. From a procedural viewpoint, the petition to quash the summons directed to the corporation was made only by the corporation. The accountants to whom the other summons was directed made no motion to quash. The petition, in effect on behalf of the accountants, was made by the taxpayer himself. The appeals are taken by the corporation as to the summons directed to it and by Percy C. Magnus as to the summons directed to the accountants.

The background facts reveal that the taxpayer Percy C. Magnus who owns 80% of the stock of the corporation did not file income tax returns for the years 1948 through 1957 or pay any income taxes during this period. After investigation had been commenced, Percy C. and Margaret A. Magnus, his wife, filed delinquent returns for these years which disclosed a gross income for these years in excess of $1,280,000. The primary source of this income was derived from the corporation; the accountants, using the corporation's books, prepared the delinquent returns. Through the issuance of the summons, the revenue agents sought to obtain access to the corporation's books to ascertain what taxes, if any, should have been reported by the taxpayers for the years in question and to relevant papers, records or documents used by the accountants in preparing the returns. The summonses were issued some ten months before the indictment was returned. They were issued by a Special Agent just beginning his investigation of the taxpayers' returns, at a time when no final conclusion had, or even could have, been made as to whether criminal action was indicated. However, due to delays resulting from appellant's efforts to prevent compliance, the government was forced to secure an indictment against the taxpayers before the summonses could be enforced in order to prevent the statute of limitations on criminal prosecutions from running. The question before us is whether the right to enforcement under those circumstances is thereby nullified and the government forced to resort solely to Rule 17 of the Federal Rules of Criminal Procedure.

Section 7602 authorizes the Secretary of the Treasury or his delegate to issue a summons for the examination of books, papers and other documents and records

> "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, * * *."

The taxpayer, Percy C. Magnus, claims that, since he has been indicted, albeit some ten months subsequent to

the issuance of the summonses, the investigative power of the government must be limited exclusively to the discovery and inspection provisions of Rule 17 of the Federal Rules of Criminal Procedure and that once an indictment has been returned, service *or* enforcement of such summonses is absolutely foreclosed. For this proposition appellant relies heavily on United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953) and Application of Myers, 202 F.Supp. 212 (E.D.Pa.1962). O'Connor involved a summons directed to an accountant of the taxpayer under investigation. A Special Agent had completed his investigation, turned his report over to higher authorities and an indictment had already been returned when the Special Agent issued a summons against the accountant. The Special Agent there admitted that the summons was for the purpose of criminal prosecution and that he had no matter involving the taxpayer presently pending before him when the summons was issued. In denying a government petition to enforce the summons, Judge Wyzanski was of the view that the pre-trial discovery powers of the government in criminal cases was severely limited and that the primary body for the compulsory disclosure of documents before trial is the Grand Jury. He further stated that:

"To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of crim-

inal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction the perversion of a statutory power. The power under § 3614 [now Section 7602] was granted for one purpose, and is now sought to be used in a direction entirely uncontemplated by the lawgivers." (118 F.Supp. 248, 251).

The Myers case, which involved a summons issued several days before the criminal prosecution was set for trial, is of a similar effect.

▪ Under the Federal Rules, discovery by the government is quite limited. Rule 16,[1] the general discovery provision, applies only to defendants. Rule 17(c)[2] was not intended to provide an additional means of discovery, but rather was meant to establish a liberal policy for the production, inspection and use of materials at the trial. Bowman Dairy Co. v. United States, 341 U.S. 214, 220–221, 71 S.Ct. 675, 95 L.Ed. 879 (1951).

As the Ninth Circuit in Boren v. Tucker, 239 F.2d 767 (1956) made clear, where there is a possibility of tax fraud, the taxpayer is faced with either a 50% penalty or a criminal prosecution or both. In investigating whether a fraudulent return changes the taxpayer's liability, the Internal Revenue Service must weigh the possibility of criminal prosecution.

---

1. Rule 16 provides that:
"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable * * *."

2. Rule 17(c) provides that:
"A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or· objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."

**16**

■■ The mere securing of an indictment does not conclude the task of the examining revenue agents. The Secretary or his delegate is charged with the responsibility of "making a return where none has been made" and verifying such returns as have been filed. The necessity of determining the correct tax liability and whether a 50% penalty for fraud should be imposed does not cease when an indictment is obtained because regardless of the outcome of any criminal trial, the tax and the penalty may still be payable (Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917). If a taxpayer were permitted to challenge every summons issued to a third person who might have books, records or information relating to the ascertainment of tax liability, the government's search for data to establish the truth or falsity of returns or the proper tax if no returns were filed would be completely blocked.³ Adequate protection against violation of taxpayers' constitutional rights is afforded by safeguarding their own records against illegal search and seizure and by enforcement of the law against self-incrimination. However, to hold that information cannot be obtained under Section 7602 merely because it may be used in criminal proceedings would virtually write that Section out of the statute. Nor is there any conflict here between Rule 17 and Section 7602. They are not mutually exclusive. Each was designed to serve its own purpose. If the question of abuse of legal process arises, as the court may have believed to have been present in the O'Connor case, the courts can deal with such situations. Certainly such facts are not present here.

■ To prevent enforcement of such summonses because compliance was re-sisted for such a lengthy period that the government was forced to return an indictment to prevent the criminal statute of limitations from running would encourage litigants to resist such summonses wholly for the purpose of delay. Without questioning the reasons for appellants' tactical efforts in this case, the fact remains that to quash the summonses under these facts would lead to that result. The appellants here failed to file any returns until September, 1959, for the years 1947 through 1957, subsequent to the commencement of an examination into their affairs by the Internal Revenue Service. The summonses as originally issued came well within the purposes designated in the statute, and we deem the time of issuance to be the significant date on which to base a determination of the validity of a Section 7602 summons.

■■ The government argues that the corporation has standing only to raise objections directly affecting it and that the taxpayer, Percy C. Magnus, has no standing to quash summonses served upon third parties when the summonses do not require the production of the taxpayer's property. Here the corporation would have standing to object to the enforcement of a summons issued for a purpose outside of the scope of § 7602, to enforcement which would constitute an unreasonable search and seizure under the Fourth Amendment and to such vagueness in description of papers and documents as would prevent compliance. In addition, third parties "have the protection always accorded to them by the courts which limit burdensome subpoenas, restrict them to relevant material and refuse to permit unwarranted searches and seizures." Application of Magnus, 299 F.2d 335, 337 (2 Cir.,

---

3. "A taxpayer may refuse to file any return whatever and take his chances; in that case he can stand upon his constitutional privileges against producing any evidence against himself. But, when he files a return, he subjects his affairs to the scrutiny of the Treasury, which cannot otherwise check his statements. That repeated scrutiny may become very irksome nearly everybody knows from experience; but no constitutional difficulties arise, none at least unless the abuse is far more crying than here." (Bolich v. Rubel, 2 Cir., 1933, 67 F.2d 894 at p. 895).

1961), cert. denied 370 U.S. 918, 82 S. Ct. 1556, 8 L.Ed.2d 499 (1962). However, the facts do not support objection on any of these grounds.

■ The taxpayer has standing to object only if the use of the summons is an impermissible ruse to obtain the taxpayer's books and records or other material or information in violation of the taxpayer's constitutional rights. Again, however, no facts have been adduced by the taxpayer to show any such purpose. To the contrary, as previously mentioned, the summonses were issued some ten months before the indictment.

One additional problem is presented for disposition on this appeal. The summons issued against the corporation is extremely broad. It calls for the production at the office of the Internal Revenue Agent of the following books and records for the years 1947 to 1957: (1) General Ledger; (2) General Journal; (3) Cash Receipts Book; (4) Cash Disbursements Book; (5) Bank Statements and Cancelled Checks; (6) Stock Certificate Book; (7) Minute Book.

■ However, we cannot be certain of the exact direction of the agent's search at the present time. The judge below, in anticipating this problem, indicated that if satisfactory arrangements could not be made by the parties, "an application for directions can be made to the court." We think this is the best way to deal with this situation. A considerable degree of discretion should be vested in the district courts to work out the appropriate limitations on which records are subject to investigation and the best location of such an inspection for all concerned. It may well be that the examinations can be conducted at the offices of the corporation and the accountants. If the parties are unable to agree, the district judge is empowered to find that solution leading to the most efficient examination of such records consonant with the least possible interference with the everyday conduct of the corporation's business.

Affirmed.

LUMBARD, Chief Judge (concurring).

I concur with my brothers in affirming the ruling below and in their resolution of the substantive issues presented on this appeal. Because I am troubled by the growing practice of attempting to impede tax investigations by a series of oppositions to the government's subpoenas, I deem it advisable to state my views regarding the standing of these appellants to raise the objections which they assert.

The corporation objects to enforcement of the summons served on it on the following grounds:

"1. Enforcement of the summons is sought for a purpose outside the scope of the statute authorizing the use of the summons;

"2. Enforcement of the summonses [sic] would permit pretrial discovery in violation of the Federal Rules of Criminal Procedure;

"3. Inspection of the corporation books would violate the provisions of the Internal Revenue Code regulating such inspections;

"4. The description of the documents in the summons lacks reasonable certainty and the documents described are not material and relevant to the inquiry."

Brief for Appellants, pp. 3–4. The taxpayer objects to enforcement of the summons served on the accountants only on the first two grounds stated. Since each appellant has standing to assert only those objections which affect rights personal to it or him, I would hold that the corporation has standing to raise grounds (1), (3), and (4), above, and that the taxpayer has standing to raise only ground (2).

It is, of course, appropriate for a party served with a summons of the Internal Revenue Service pursuant to § 7602 of the Internal Revenue Code to object to its enforcement on the ground that the Service has exceeded its statutory authority; the Service has only

that power which the statute confers. See Foster v. United States, 265 F.2d 183, 187 (2 Cir.), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959); Hubner v. Tucker, 245 F.2d 35, 39 (9 Cir. 1957). Since the first objection asserts that the summons served on the corporation exceeds the authority conferred by § 7602, and the third asserts that the summons disregards the limitation on that authority expressed in § 7605(b) of the Code, the corporation has standing to raise both of those objections. It is also proper for the corporation to raise the fourth objection, which pertains to claimed rights of the corporation itself. As we said at an earlier stage of this protracted litigation, third parties who become involved in tax investigations of another "have the protection always accorded to them by the courts which limit burdensome subpoenas, restrict them to relevant material and refuse to permit unwarranted searches and seizures." Application of Magnus, 299 F.2d 335, 337 (2 Cir.), cert. denied, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962).[1]

The second ground for objection raises essentially the same issues as the first, inasmuch as it asserts in effect that the purpose for which enforcement is sought lies without the statutory authorization. But the right on which it focuses is the right of the taxpayer to be free of pre-trial discovery by the government beyond that allowed by Rule 17 of the Federal Rules of Criminal Procedure. The corporation has no stake in the conduct of the criminal prosecution against the taxpayer, and lacks standing to protest against a violation of his rights. Compare cases in which the taxpayer has been denied standing to assert the rights of a third person. Eg., Application of Magnus, supra; Foster v. United States, supra.

The taxpayer has no standing to object to enforcement of the summons served on the accountants on the first ground above. We have already held that a taxpayer may not assert the constitutional rights of another sought to be examined in connection with the former's tax liability. Foster, supra, 265 F.2d at 187–188. That ruling is applicable here, where the taxpayer claims that a third-party summons is unauthorized by statute. He does, however, have the immediate, personal interest necessary for standing to raise the objection that enforcement of the summons against the accountants will constitute improper pre-trial discovery in the criminal action now pending against him. Compare my concurring opinion in Foster, supra, at 189.

Ordinarily, a summons "is personal to the person to whom it is directed and strangers have no standing either to substitute themselves for the person to whom it is directed, or to quash it." Albachten v. Corbett, 156 F.Supp. 863, 864 (S.D.Cal.1957). And, as in this case with respect to the summons served on the corporation, the person summoned can, if he chooses, make an indicted taxpayer's objection for him in the form of the first objection above. This was the procedure used in Application of Myers, 202 F.Supp. 212 (E.D.Pa.1962), and United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953). But if the person summoned chooses not to contest enforcement, a taxpayer's rights in a pending criminal action might go unprotected unless he is permitted to assert them in the enforcement proceedings. The rules of standing are not so rigid that a court whose authority is sought in aid of a summons must keep its doors closed to the taxpayer in such a situation. Neither the taxpayer nor the government would be well served by postponing until trial a hearing of the claim that pretrial discovery violated the Federal Rules of Criminal Procedure; at that stage it might be very difficult to unravel properly obtained evidence from that which, di-

1. Cases in which the taxpayer was not permitted to object on such grounds to the enforcement of a summons served on a third person, e. g., Foster v. United States, supra, are inapposite.

rectly or indirectly, was obtained by allegedly unauthorized means. At least in cases like the present, where the objection is not otherwise raised, a taxpayer who has already been indicted should be permitted to object to enforcement of a third-party summons on the ground that enforcement would permit the government to make unauthorized pre-trial discovery in the criminal proceeding pending against him. The question whether, in a case where the third person asserts the objection, the taxpayer must be permitted to intervene or can be kept out or confined to presenting his views as amicus curiae is not raised by this appeal.[2]

Since in my view one or the other of the appellants has standing to raise each of the objections set out above, it is appropriate for me to record my concurrence on the merits.

2. In United States v. O'Connor, supra, the third person did raise the objection. Judge Wyzanski denied the taxpayer the right to intervene but allowed him to present his views by counsel as amicus curiae.