419 F.2d 564
 UNITED STATES of America and Harold F. McGuire, Special Agent, Internal Revenue Service, Appellees,
v.
William A. GIORDANO, as President of Banana Distributing Company of St. Louis, Incorporated, Appellant.
 No. 19862.
 United States Court of Appeals Eighth Circuit.
 December 12, 1969.
 Rehearing Denied January 5, 1970.
 Rehearing Denied En Banc January 7, 1970.
 
 Irl B. Baris, Newmark & Baris, St. Louis, Mo., for appellant, Leonard J. Frankel, St. Louis, Mo., with him on the brief.
 John P. Burke, Atty., Dept. of Justice, Washington, D. C., for appellees, Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson and Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., and Daniel Bartlett, Jr., U. S. Atty., and Daniel R. O'Neill, Asst. U. S. Atty., St. Louis, Mo., with him on the brief.
 Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.
 MEHAFFY, Circuit Judge.
 
 
 1
 William A. Giordano as President of Banana Distributing Company of St. Louis, Incorporated, sometimes hereafter referred to as taxpayer, appeals from an order of the United States District Court for the Eastern District of Missouri, Eastern Division, directing taxpayer to comply with a summons issued by the Internal Revenue Service pursuant to § 7602 of the Internal Revenue Code of 1954 (26 U.S.C. § 7602). The summons required Giordano to appear and give testimony and to produce the corporate records pertaining to the operation of the company for the period beginning January 1, 1964 and ending December 31, 1966. Giordano appeared pursuant to the summons but refused to testify other than admitting he was president of the company and refused to produce the books and records requested. Following this, a complaint was filed under authority of § 7402(b) and § 7604(a) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. §§ 7402(b) and 7604(a).
 
 
 2
 The case was tried to the district court sitting without a jury and the menorandum of Chief Judge Roy W. Harper ordering compliance with the summons is reported in 301 F.Supp. 884 (E.D.Mo. 1969). We affirm.
 
 
 3
 There is little, if any, dispute on the facts. Revenue Agent Jerome B. Marchbein testified that he first attempted to get the books and records around November, 1967 and telephoned Giordano for an appointment. Giordano advised that he would talk to his accountant and let the agent know in a few days. Some two or three weeks later taxpayer's accountant, a Mr. Shelton, called and told Agent Marchbein he knew which books and records were necessary and that he would procure them, and suggested that the examination be made in his office due to the activity and lack of space at the Banana Company office. Shortly thereafter, a Mr. Musser, a CPA in Shelton's office, called Agent Marchbein advising that he had gathered some of the books and records and an appointment was made for examination of them in the accountant's office for January 8, 1968. Agent Marchbein went to the accountant's office at 9:30 on January 8, 1968 for inspection of the books and records there provided. All of the necessary books and records were not there. For example, the accounts receivable ledger and the cash disbursement journal were missing. The accountant said he had forgotten to bring them from the Banana Company. Also, certain underlying records were necessary for a proper audit. The agent gave the CPA a list of the additional records needed to conduct a proper audit. He told the accountant to call him when the records were made available and he would come back and continue the investigation. Agent Marchbein left the accountant's office at 3:30 that afternoon, having been there for a period of approximately six hours. When the accountant did not call the agent, as requested, the agent called him and he was told the matter had been discussed and the agent was to contact Mr. Baris, attorney for the taxpayer. The agent called the attorney three or four times and told him the records he wanted, and the attorney indicated that the taxpayer would not make these records available. When furnishment of these records was refused by taxpayer's attorney, the summons was issued listing a number of the documents required as well as all documents relating to the years involved. There is no evidentiary dispute that the records requested and not furnished were necessary for a proper audit.
 
 
 4
 Taxpayer summarizes the assignments of error as follows:
 
 
 5
 "[T]hat the summons should have been preceded by a written notice of a second inspection, that the statute of limitations bars the summons, that the summons was not issued for a proper purpose, and that the summons violated the Fourth and Fifth Amendments to the Constitution of the United States."
 
 
 6
 The Second Inspection Notice. No second inspection notice was required in this case for the reason that the revenue agent was frustrated in his effort to make even an initial investigation or examination by the refusal of the taxpayer to furnish the necessary books to accomplish this purpose. The statute, § 7602,[1] authorizes the Secretary or his delegate, for the purpose of determining the liability of any person for internal revenue tax, to examine any record which may be relevant or material to such inquiry and to summon such person or officer of such person to appear and produce records and to give testimony as may be relevant or material to the inquiry.[2]
 
 
 7
 Section 7605(b) provides that no taxpayer shall be subjected to unnecessary examination or investigation and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer is notified in writing that an additional inspection is necessary.[3]
 
 
 8
 Taxpayer's argument that failure to provide the taxpayer with a second inspection notice invalidates the summons is without merit. This argument is falsely premised as there is no second inspection or examination involved because at most the Government was merely attempting a continuation of its examination. The record reveals without dispute that a proper audit could not have been made from the books and records furnished; that the time utilized by the revenue agent could not have resulted in a proper audit even if the taxpayer had furnished all necessary books and records; that obviously an examination such as authorized by § 7602 was not possible under the circumstances here; and that under such circumstances § 7605(b) could not possibly and reasonably lend itself to a construction that would preclude the Government from making at least one meaningful examination of the books of account for the years involved.[4]
 
 
 9
 In Nat'l Plate & Window Glass Co. v. United States, 254 F.2d 92, 93 (2nd Cir. 1958), the court said:
 
 
 10
 "The cursory examination of the taxpayer's records on February 28, 1957 was not shown to have completed the investigation; it did not constitute an `inspection' within the meaning of this statute."
 
 
 11
 In Application of Magnus, 299 F.2d 335 (2nd Cir. 1962), the court dealt with summons against third parties, but the language relating to § 7605(b) is equally applicable to the case here. The court said at page 337:
 
 
 12
 "An investigation, however, often requires a long period of time. There may be many ramifications which lead into many areas. Each new clue investigated is not a new investigation in a Section 7605(b) sense. A taxpayer cannot properly claim that because IRS has summoned six third parties it cannot summon six additional without showing good cause. The investigation continues until completed as one investigation."
 
 
 13
 In United States v. Crespo, 281 F.Supp. 928, 933 (D.Md.1968), the court said:
 
 
 14
 "Similarly, the fact that a revenue agent has seen a cash book, journal or ledger once does not mean that he may not need to see it again for a different purpose."
 
 
 15
 The court there held that when an investigation has not been completed, such examination is not a second inspection within the meaning of the statute requiring written notice.
 
 
 16
 We hold that this was a continuing investigation, which it necessarily had to be under the circumstances hereinabove recited, and hence no second inspection notice was required and the summons is valid.
 
 
 17
 The Statute of Limitations. The running of the normal three-year statute of limitations on one or more of the years involved does not terminate the authority of the Government to use the summons in this case.[5] Such a holding might well seriously impede the Government's right to collect lawfully due taxes solely on account of a taxpayer's refusal to cooperate and his utilization of delaying and hypertechnical tactics. This question, however, has been decided adversely to taxpayer in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L. Ed.2d 112 (1964). There, the Supreme Court said at page 58, 85 S.Ct. at page 255:
 
 
 18
 "The burden of showing an abuse of the court's process is on the taxpayer, and is not met by a mere showing, as was made in this case, that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined."
 
 
 19
 The Court further said in n. 15 on page 56, 85 S.Ct. on page 254:
 
 
 20
 "The present three-year limitation on assessment of ordinary deficiencies relieves the taxpayer of concern for further assessments of that type, but it by no means follows that it limits the right of the Government to investigate with respect to deficiencies for which no statute of limitations is imposed."
 
 
 21
 Here, a substantial omission of income by the taxpayer in 1964 would be assessable until 1971 under § 6501(e). Additionally, discovery of a false return or a willful attempt to evade the tax would completely remove any limitation on assessment under § 6501(c) (1) and (2).
 
 
 22
 Taxpayer argues that Powell is not dispositive because in the instant case there is no allegation or evidence of fraud, but such was the situation in United States v. Wozniak, 381 F.2d 764 (6th Cir. 1967), in which that court cited, in addition to Powell, Ryan v. United States, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed. 2d 122 (1964), handed down simultaneously with Powell, in holding that the Supreme Court cases were dispositive of the issue there. We agree with the rationale in Wozniak in its interpretation of the Powell and Ryan cases, and hold that the Secretary of the Treasury or his delegate had the authority to make use of the summons in the instant case.
 
 
 23
 Proper Purpose. The district court found from undisputed evidence that the investigation sought by the Government was for the purpose of determining the correct income tax liability of the corporation for the years in question and that this was a proper purpose. This would appear indisputable. It is true that the investigation may disclose facts that might warrant criminal prosecution or assessment of civil fraud penalties, but this would not impair the validity of the summons. In United States v. Hayes, 408 F.2d 932, 936 (7th Cir. 1969), the court said:
 
 
 24
 "The fact that an investigation for the purpose of determining tax liability is deemed likely to produce evidence warranting criminal prosecution does not make the use of summons an improper use."
 
 
 25
 See also McGarry v. Riley, 363 F.2d 421, 424 (1st Cir. 1966), cert. denied, 385 U.S. 969, 87 S.Ct. 502, 17 L.Ed.2d 433 (1966); Wild v. United States, 362 F.2d 206, 209 (9th Cir. 1966); Sanford v. United States, 358 F.2d 685, 686 (5th Cir. 1966).
 
 
 26
 Taxpayer in his brief characterized the Government's efforts as a "fishing expedition." If so, the Secretary or his delegate has been specifically licensed to fish by § 7602.
 
 
 27
 The Fourth Amendment. The taxpayer contends that the summons is invalid because it is overly broad in that it seeks all of the taxpayer's reports and records pertaining to the tax years involved. The short answer to this is that the uncontradicted evidence established that every document demanded would relate to the tax liability for the years involved and, of course, the Government has the statutory right to this information.
 
 
 28
 In McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960), the subpoena involved there called for "all records, correspondence and memoranda pertaining to the organization of, * * *." The Court in holding the subpoena valid said at pages 382-383, 81 S.Ct. at page 144:
 
 
 29
 "This subpoena was not more sweeping than those sustained against challenges of undue breadth in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, and Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614."
 
 
 30
 In Adams v. F.T.C., 296 F.2d 861, 867 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962), this court said:
 
 
 31
 "* * * [B]roadness alone is not sufficient justification to refuse enforcement of a subpoena so long as the material sought is relevant."
 
 
 32
 We note that taxpayer did not object to any of the many documents sought despite his burden in such a situation. It is unnecessary to belabor this point, but we note that the Supreme Court in Oklahoma Press Publishing Co. v. Walling, supra, clearly rationalizes the inapplicability of the Fourth Amendment.
 
 
 33
 The Fifth Amendment. We perceive no Fifth Amendment issue involved in this appeal. Giordano testified at the evidentiary hearing before Judge Harper and he was not asked any question the answer to which would have tended in any way to incriminate him, and neither did he refuse to answer any question on constitutional grounds. Furthermore, it is settled law that an order to produce corporate books and records does not violate an individual's privilege against self-incrimination. United States v. Christiansen, 356 F.2d 986 (3rd Cir. 1966), cert. denied, 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966); Hair Industry, Ltd. v. United States, 340 F.2d 510 (2nd Cir. 1965), cert. denied, 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965); Wild v. Brewer, 329 F.2d 924, 928-929 (9th Cir. 1964), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964). Additionally, see the exhaustive discussion on this point in United States v. Crespo, supra, tracing Supreme Court opinions from the earliest, all to the same effect. In Crespo, the court concluded (281 F.Supp. at 937):
 
 
 34
 "Therefore, it is clear that the Fifth Amendment privilege against self-incrimination does not allow respondent Crespo to refuse to produce the corporate records in the case at bar."
 
 
 35
 We conclude that none of taxpayer's assignments of error is meritorious. In fact, the referral of the revenue agent from the taxpayer to his accountant, from said accountant to his associate, and from said associate to the attorney has all the earmarks of designed delaying tactics utilized to avoid furnishing the corporate books of account which the statute clearly authorized in its § 7602 grant to the governmental agency. If this type of conduct became widespread and was condoned, it could well result in impairment to the point of breakdown of the Government's right to collect the taxes legally due. It also would result in a consummate waste of valuable manpower by the IRS and unnecessary expenses never contemplated by the law. Even if it were necessary for us to resort to a rule of statutory construction to reach our conclusion, the result reached would be the same as we would be compelled to liberally construe the powers given the governmental agency in this case. De Masters v. Arend, 313 F.2d 79 (9th Cir. 1963).[6]
 
 
 36
 The district court entered its stay order until the outcome of appeal to this court is finally determined. The stay order is vacated and the order of the district court requiring compliance with the summons is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hereafter all section references, unless otherwise indicated, will be to sections of the Internal Revenue Code of 1954, as amended, codified under the same section numbers in Title 26, U.S.C
 
 
 [2]
 Section 7602 provides:
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized —
 "(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 "(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 "(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."
 
 
 [3]
 Section 7605(b) provides:
 "(b) Restrictions on examination of taxpayer. — No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."
 
 
 [4]
 The affidavit of Special Agent Harold F. McGuire contained the following allegation:
 "That the testimony and records demanded by the summons issued to the defendant, William A. Giordano, are necessary for the determination of the tax liabilities of Banana Distributing Company of St. Louis, Incorporated, for the years 1964, 1965 and 1966."
 
 
 [5]
 The validity of the summons is, of course, determined as of the date of issuance. In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 16 (2nd Cir. 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963)
 
 
 [6]
 In De Masters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963), the court said:
 "These grants of power are to be liberally construed in recognition of the vital public purposes which they serve; the exception stated in Section 7605(b) is not to be read so broadly as to defeat them. A limited construction of Section 7605 (b) is also supported by the law's general antipathy to the erection of barriers to the ascertainment of truth, and the policy against judicial intervention in the investigative stage of tax matters because of the danger of undue delay in the collection of the revenues."