UNITED STATES of America and Martin Hoffenblum, Special Agent of the Internal Revenue Service, Petitioners-Appellees,

v.

George CROMER, Respondent-Appellant.

No. 72–2936.

United States Court of Appeals, Ninth Circuit.

June 18, 1973.

Orin G. Grossman (argued), Las Vegas, Nev., for respondent-appellant.

Robert Lindsay (argued), Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., V. De Voe Heaton, Asst. U. S. Atty., Las Vegas, Nev., Meyer Rothwacks, John P. Burke, Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.

Before CHOY and WALLACE, Circuit Judges, and LYDICK,* District Judge.

WALLACE, Circuit Judge:

The district court entered an order granting enforcement of an Internal Revenue Service summons pursuant to Int.Rev.Code of 1954, § 7602, and this appeal followed. We affirm.

Special Agent Hoffenblum began investigating the tax liabilities of Brooks Rent A Car, Inc. and its president, Irving Bell, in 1968.[1] On April 18, 1972, Hoffenblum issued an IRS summons to Cromer, the attorney for Brooks and Bell, directing him to testify concerning

---

* Honorable Lawrence T. Lydick, United States District Judge, Los Angeles, California, sitting by designation.

1. *See* United States v. Bell, 448 F.2d 40 (9th Cir. 1971).

his clients' tax liabilities for the years 1965 through 1968. Cromer refused to testify, asserting the illegality of the summons and claiming such testimony would violate the attorney-client privilege and the Fourth and Fifth Amendments.

■ Cromer correctly states that the summons will not be enforced if: (1) issued subsequent to a recommendation for criminal prosecution, or (2) used *solely* for gathering information for a criminal prosecution. *See* Donaldson v. United States, 400 U.S. 517, 533, 536, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Wild v. United States, 362 F.2d 206, 208–209 (9th Cir. 1966). However, neither impediment exists here.

■ *Donaldson* holds that the summons must be "issued in good faith and prior to a recommendation for criminal prosecution." Id. 400 U.S. at 536, 91 S. Ct. at 545. But *Donaldson* failed to identify which recommendation was critical: the initial recommendation of the special agent, the ultimate recommendation of the IRS to the Department of Justice, or some intermediate recommendation. However, here all recommendations occurred after issuance of the summons. The validity of a § 7602 summons is tested as of the date of issuance. *See* In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 16 (2d Cir. 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963).

■ Cromer asserts that the purpose of the summons was to gather evidence for a criminal prosecution. Because a recommendation for prosecution was made later despite his non-compliance with the summons, he argues that the government must have had sufficient information for an indictment at the time the summons was issued. He then reasons that the investigation must have been to secure evidence for a criminal prosecution. That the government was forced to prosecute to toll the statute of limitations[2] while Cromer resisted does not invalidate the summons. United States v. Moriarty, 435 F.2d 347, 349 (7th Cir. 1970); In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 16 (2d Cir. 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963).

■■ He also urges that since a recommendation has now been made for criminal prosecution, enforcement of the summons *at this time* would be solely for gathering evidence. This argument also fails because the time of issuance is the significant date for determining the legitimacy of the summons. Where the possibility of civil liability as well as criminal prosecution exists at the time of issuance, the summons is valid. *See* United States v. Bell, 448 F.2d 40, 41–42 (9th Cir. 1971); Wild v. United States, 362 F.2d 206, 209 (9th Cir. 1966); Boren v. Tucker, 239 F.2d 767, 772–73 (9th Cir. 1956). *See also* In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 17 (2d Cir. 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963). United States v, Moriarty, 435 F.2d 347, 349 (7th Cir. 1970). In this case, the possibility of civil liability is obvious, not only for a possible civil fraud charge where there is no statute of limitations,[3] but for the years in question where the statute of limitations had not yet run.

Cromer next claims that he need not respond to the summons due to the attorney-client privilege. The summons in question required Cromer to testify as to the amounts owed to him by Bell and Brooks on certain dates, the identification of payments by case file name, the general purpose of the legal work and whether it was performed for Brooks or Bell.

■■ The nature and existence of the privilege are determined by Nevada law. Baird v. Koerner, 279 F.2d 623, 632 (9th Cir. 1960).[4] The applicable

---

2. Int.Rev.Code of 1954, § 6531.

3. Int.Rev.Code of 1954, § 6501(c)(1).

4. *But see* Proposed Fed.R.Evid. 501, 503, 1101.

Nevada statute[5] is of recent origin and we are left without guidance from Nevada courts. However, the term "confidential" has been statutorily defined:

A communication is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

Nev.Rev.Stat. § 49.055. We fail to see how the specific information requested can be considered a confidential communication. *See* Colton v. United States, 306 F.2d 633, 637–638 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); C. McCormick, Evidence § 90 (2d ed. 1972).

■ Finally, Cromer attempts to raise Fourth and Fifth Amendment claims for his clients as well as himself. Even if he could raise the rights of Bell and Brooks, neither could prevent the sought-after testimony of Cromer. *See* Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); DeMasters v. Arend, 313 F.2d 79, 85 (9th Cir.), appeal dismissed per stipulation, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed. 2d 269 (1963).

■ Equally unmeritorious is his claim that enforcement of this summons would violate his own Fourth and Fifth Amendment rights. Cromer does not demonstrate, as he must, how, as a result of revealing the answers to the specific questions that he has been ordered to answer, there will be a violation of his rights. His speculation and conjecture are insufficient. "It is well established that the privilege protects against real dangers, not remote and speculative possibilities." Zicarelli v.

New Jersey State Comm'n of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972); Hoffman v. United States, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In addition to the specific questions, the enforcement order also requires Cromer to testify generally as to the tax liabilities of Bell and Brooks. A blanket objection is premature and he must wait for the questions to be asked. United States v. Bell, 448 F.2d 40, 42 (9th Cir. 1971).

Affirmed.

5. Nev.Rev.Stat. § 49.095 provides:

A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:

1. Between himself or his representative and his lawyer or his lawyer's representative.

2. Between his lawyer and the lawyer's representative.

3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest.